CORNELIA A. JOHNSON *vs.* MARIAN B. KNAPP & others.
SAME *vs.* ANSON GAGE & others.

Franklin.　September 18, 1889. — November 30, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Easement — Deed — Implied Grant — Incumbrance — Revocable License.*

The owner of two lots of land, one of which was supplied with water by a pipe
laid underground across the other from a spring in land of a third person under
a revocable license from him, conveyed the former lot to one person with no
mention of water or pipe, and afterwards conveyed the latter lot covenanting
against incumbrances to another, who had no knowledge of the existence of
the pipe. Subsequently, the license was revoked, and the lot supplied with
water from another source. *Held,* that there was no implied grant in favor
of the former lot to maintain the pipe in the latter lot, and that the grantee of
the latter lot took it free from the incumbrance.

TWO ACTIONS OF CONTRACT on the covenant against incum-
brances in two deeds from the defendants to the plaintiff, each
conveying an undivided half of a lot of land in Orange.　After
the former decision, reported 146 Mass. 70, the cases were tried
together in the Superior Court, without a jury, before *Barker,* J.,
and were, so far as material, as follows.

In 1865 one Carpenter, who then owned the plaintiff's lot,
acquired title to land lying to the west of it, called the Pome-
roy lot. The Emory lot, so called, upon which was a well or
spring, was situated northeast of the plaintiff's lot.　At that
time a pipe was laid from this spring underground through and
across the plaintiff's lot, and extended into the Pomeroy lot, and
had supplied a dwelling-house upon the latter with water since
1838.　No grant by deed or conveyance was ever made by the
owner of the Emory lot of a right to take water from the spring
to supply the Pomeroy lot, and no right by prescription was
ever gained so to supply it.　In 1866 Carpenter conveyed the
Pomeroy lot by a warranty deed, in which no mention was made
of the water or of the pipe, although at the time the water still
ran through it, with his knowledge, and so continued until he
died seised of the plaintiff's lot.　Subsequently the defendants
acquired title to the plaintiff's lot, and in 1880 she in good

faith and for value took from them warranty deeds covenanting against incumbrances. At that time the pipe was entirely buried in the ground, so that its existence and use in conveying water to the Pomeroy lot were not apparent, and the plaintiff had no knowledge thereof at the time of the conveyance to her. In May, 1885, the supply of water from the Emory spring to the Pomeroy lot, which had continued up to that time, was cut off, and in November of the same year the house on the lot was connected with a pipe in the adjoining street, and since that time has been supplied from that source.

The judge ruled that the plaintiff was entitled to recover, and found for her in each case, and reported the cases for the determination of this court. If the ruling was correct, judgment was to be entered upon the finding; but if no right to maintain the pipe in the plaintiff's lot passed to the grantee of the Pomeroy lot, by implication, by the deed from Carpenter to him, and no incumbrance on the plaintiff's lot was created thereby, judgment was to be entered for the defendants.

*S. D. Conant*, for the plaintiff.

*A. De Wolf*, for the defendants.

HOLMES, J. The case as now presented is different from that heretofore passed upon by this court. As the case then appeared, it was consistent with the facts found, and might have been inferred as a conclusion from them, that Carpenter, as owner of the Pomeroy lot, had a right to draw the water from the Emory spring to that lot across his other land, which now belongs to the plaintiff. *Johnson* v. *Knapp*, 146 Mass. 70, 75. The court below, without finding that Carpenter had no right to the water, had ruled that the plaintiff's action could not be maintained; and it was held that that ruling was wrong. If an easement over the Emory lot was incident to the Pomeroy lot, it would have passed by the conveyance of that lot without mention had the latter adjoined the former, and plainly it ought to pass equally, notwithstanding the fact that some land of the grantor lay between the two, the Emory spring being the manifest source of the water supply for the Pomeroy lot, and the easement being reasonably necessary to the enjoyment of the premises conveyed. But in order to give the Pomeroy lot the benefit of this easement, it was necessary to grant the subsidiary

easement of maintaining pipes across the land which lay between the dominant and servient estates. This court decided that a grant of such an easement was to be implied. The decision went no further, although the mode of statement went beyond the necessities of the case, and suggested *obiter* that the law would be the same if Carpenter was using the water without right. Probably the case before the mind of the court at that moment was one of a use under a claim of right, and under a belief that a right existed, although it did not exist in fact.

It now appears that there was no easement over the Emory lot, and it would seem that the water was drawn from it only by license, which was revoked in 1885, since which time the Pomeroy house has been supplied from other sources. At all events, there is nothing to show that any one supposed that there was any right to take the water. We are of opinion that the former decision is not applicable to this state of facts.

It would be carrying the implication of grants too far to say that an easement in fee to maintain pipes shall be implied wherever pipes exist, although without a right to water, in the hope that something may happen to give the permanent right to fill them. No ground for such a hope was shown in this case, and if the hope existed, it was not fulfilled. We think that no grant of a right to maintain the pipes reasonably could be implied for any longer time than the duration of the right to take the water for the sake of which the pipes were maintained. The actual right to the water was a mere license, revocable at any time. If an easement during the pleasure of a third person is an interest in land which is known to the law, it would need plain words to create it.

We have not found it necessary to consider how far the tests of necessity in the case of implied grants vary, if at all, from those suggested in *Carbrey* v. *Willis*, 7 Allen, 364, 370, *Randall* v. *McLaughlin*, 10 Allen, 366, 368, and *Buss* v. *Dyer*, 125 Mass. 287. See *Pettingill* v. *Porter*, 8 Allen, 1, 7 ; *Oliver* v. *Dickinson*, 100 Mass. 114; *Watts* v. *Kelson*, L. R. 6 Ch. 166, 171 ; *Wheeldon* v. *Burrows*, 12 Ch. D. 31; *Bayley* v. *Great Western Railway*, 26 Ch. D. 434, 458.

The argument for a reasonable strictness, drawn from the registry laws, in *Warren* v. *Blake*, 54 Maine, 276, 289, is illus-

trated in this case, where the plaintiff bought a title which seemed clear from the deeds, without any knowledge of the existence of the pipes underground. We are of opinion that she took free from the incumbrance, and therefore that she shows no breach of covenant.        *Judgment for the defendants.*