## John Watson *vs.* Walter T. French.

Aroostook.    Opinion November 23, 1914.

*Easement by Necessity.    Equity.    Injunction.    Right of Way.    Right to disconnect plaintiff's water pipe.*

On bill in equity praying for an injunction enjoining the defendant from interfering with, or preventing the repairing and restitution by said plaintiff of the water connection with the water main of the Houlton Water Company.

*Held:*

1.  That under the facts of this case and under the circumstances and conditions existing when the deed was executed, the plaintiff had an implied grant of the right to have the water pipes remain as at the time of conveyance, or at least in some situation equally adapted to conveying water to the plaintiff's premises; in other words the plaintiff has an easement by necessity.

2.  That to create such an easement, strict necessity and not mere convenience is required.

3.  That such a strict necessity exists in this case because a water supply to the stable from some source is absolutely necessary, and this is the only available source.

4.  That the plaintiff cannot reach the main through other land of his own and has no rights in the private way other than rights of travel.

5.  That the plaintiff's necessity is not removed by the suggestion that application should be made to the Water Company for service, and the Company might take the intervening land by right of eminent domain and render the service required.

6. That it is doubtful whether the Company has the legal right under its charter to condemn the land of a private individual in order to construct a service pipe to one taker.

7. That there is no evidence that the Company would attempt to do this even if it had the legal right.

8. That a water company is not compelled to extend its mains at the request of individual takers.

9. That the fact that the defendant does not own the source of supply does not affect the plaintiff's rights. The plaintiff does not claim an easement in the water itself, but in the maintenance of the pipe whereby the water of a public service corporation can continue to flow to his premises.

On report. Bill sustained with costs. Perpetual injunction to issue. Decree accordingly.

This is a bill in equity, praying for an injunction to prevent the defendant, on his own land, from severing the connection of plaintiff with certain water pipes and the flow of water through them of the Houlton Water Company to the stable of the plaintiff. The defendant filed an answer to the bill and the plaintiff filed a replication. The cause was reported under the stipulation following; Questions of law having arisen of sufficient importance or doubt to justify the same, and the parties agreeing thereto, this cause is reported to the Law Court for determination by the Law Court upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*Madigan & Pierce*, for complainant.

*Hersey & Barnes*, for respondent.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

CORNISH, J. The rights of the parties in this case are to be determined by the construction of a certain deed given by Albion P. Heywood to the plaintiff on June 13, 1893. Prior to that time the premises of both the plaintiff and defendant belonged to Heywood, the common grantor, who on that date conveyed the rear portion with a stable thereon to the plaintiff, and retained the front portion with the opera house thereon adjoining Court Street. The plaintiff was also granted the right in common with Heywood and others "to use said passage way along the north side of said George Cary's lot and also the right to use a passage between the premises herein conveyed and the opera house, some twelve or fifteen feet wide."

The following diagram will explain the situation:

When the Houlton Water Company installed its system in 1887, Heywood made connection on June 6 of that year with the Court Street main, by means of a two inch pipe which enters the opera house cellar under the front wall, and rises up and runs across the cellar on top of the concrete floor to a point near the rear wall, and there is connected with a three-fourths inch pipe that drops down under the cellar, the rear wall and the passage way and comes up into the stable. The larger pipe supplied the opera house and the smaller the stable. This was the situation when the plaintiff occupied the stable as a tenant of Heywood for several years prior to his purchase in 1893; it was the situation when he purchased, and it remained unchanged after his purchase during the lifetime of said Heywood, and after his decease until July, 1912, when the defendant as purchaser from the heir at law of Heywood shut off the supply to the plaintiff's stable.

This bill in equity was brought asking that the defendant be enjoined ''from interfering with or preventing the repairing and restitution by said plaintiff of the said water connection wherever necessary and from interfering with the entry of the plaintiff on the premises of the defendant for that purpose and from interfering, injuring or damaging in any way either personally or by his agents, servants or employees the said connection or the flow of water from the main of the Houlton Water Company through the premises of the defendant to the stable of the plaintiff.'' The precise question involved is whether under the facts of this case and under the circumstances and conditions existing when the deed was executed the plaintiff had an implied grant of the right to have the water pipes remain as at the time of conveyance, or at least in some other situation equally adapted to conveying water to the plaintiff's premises; in other words whether the plaintiff has an easement by necessity. The vital question is, did the parties intend that the right now claimed by the plaintiff should be granted? In our opinion they did.

The basis of the plaintiff's claim is the presumption of a grant arising from all the circumstances of the case. This is but the application of the general principle that the grant of a thing is presumed to include and carry with it as an incident of the grant, whatever right the grantor had in connection with it and could convey by apt words, without which the thing granted would prove practically useless to

the grantee.   One of these circumstances, and oftentimes the con-trolling one, is the necessity, and however lenient other Courts may be in defining the degree of necessity which must exist in order to raise the implication that the easement or quasi easement passes, as in *New Jersey, Toothe* v. *Bryce,* 50 N. J., Eq., 589, and in *New York, Spencer* v. *Kileen,* 151 N. Y., 390, the rule has been firmly established in this State, and has been reiterated in many cases from *Warren* v. *Blake,* 54 Maine, 276, to *Doten* v. *Bartlett,* 107 Maine, 351, that there can be neither implied grant nor implied reservation unless the ease-ment be one of strict necessity.   Mere convenience, however great, is not sufficient.

This rule has been applied in cases of right of way of necessity as in *Whitehouse* v. *Cummings,* 83 Maine, 91; *Kingsley* v. *Land Co.,* 86 Maine, 279; *Hildreth* v. *Googins,* 91 Maine, 227; in case of stairway, *Stillwell* v. *Foster,* 80 Maine, 333, and of drainage, *Dolliff* v. *B. & M. R. R.,* 68 Maine, 173.   And the test of necessity is whether the party claiming the right can at reasonable cost on his own estate and with-out trespassing on his neighbors create a substitute.   See cases supra, and in case of a chimney, *Buss* v. *Dyer,* 125 Mass., 287, a drain, *Randall* v. *McLaughlin,* 10 Allen, 366, and *Thayer* v. *Payne,* 2 Cush., 327.   Applying this test in the case at bar necessity in its strictest sense is seen to exist.   It could not be seriously contended that a water supply to a stable from some source is not an absolute necessity, and the evidence here is uncontradicted that the only available source is by means of the pipe passing through the opera house. cellar and connecting the pipe extending to the stable with the main.   If the plaintiff's land extended to the street it might with reason be said that he should secure his supply direct from the street main.   But his land is situated about 125 feet back from the street and his only means of ingress and egress is over a private way in which he has only a right of passage in common with others.   Such a right of passage constitutes a limited easement, and gives him no such right in the soil that he could lay pipes in it to connect with the street main.   He would be a trespasser should he attempt it.   On all other sides his lot is bounded by land of other parties over which he has no rights.

The defendant suggests that if the plaintiff should apply to the Water Company for service that company would take the necessary

intervening land by right of eminent domain, and render the service desired. We do not think this argument removes the necessity and for several reasons.

In the first place, it is doubtful whether the Houlton Water Company under its charter,—Priv. L. 1880, Chap. 227,—has the legal right to condemn land of a private individual in order to construct a service pipe to one taker. In the second place there is no evidence that the Company would attempt to do this even if it has the legal right to do so. The suggestion of defendant is a mere assumption. There is no evidence of the fact. And in the third place, while a water company is obliged to furnish water to each abutting owner along the line of its mains,—*Robbins* v. *Railway Co.*, 100 Maine, 496,— it is not compelled to extend its mains at the request of individual takers. *Moore* v. *City Council*, 105 S. W., 926, *Lawrence* v. *Richards*, 111 Maine, 95. This suggested refuge is therefore too remote, indefinite and uncertain to be of any practical value in determining the question of necessity. That fact still remains.

A second fact to be considered in determining the question of implied grant is that the water pipe was open and visible. The rule laid down in *Whiting* v. *Gaylord*, 66 Conn., 337, is as follows: "The American cases have with almost entire unanimity limited easements by implied grant to such as were open, visible,—such as would be apparent to the ordinary observer,—continuous and necessary to the enjoyment of the estate, granted or retained." And the same element of visibility is recognized in the recent case of *Brown* v. *Dickey*, 106 Maine, 97, when this Court say: "An implied grant of an easement in favor of a grantee arises from circumstances where at the time of the conveyance the grantor was the owner of land constituting both the dominant and servient estates. Two classes are recognized, one called quasi easements which are existing conditions in the land retained, the continuance of which would be so clearly beneficial to the land conveyed that they would be presumed to be intended. These easements must be such as are apparent in the sense of being indicated by objects which are necessarily seen or would be ordinarily observable by persons familiar with the premises." In the case at bar the water pipe was plainly visible, its purpose was apparent, and when the defendant purchased the servient tenement he must have been fully apprised of the situation.

The third circumstance of strong corroborating force is to be found in the fact that from the time the water pipes were first installed in June, 1887, down to July, 1912, the plaintiff and his predecessors have enjoyed the use of the water flowing in identically the same manner. During nineteen years of that period, from 1893 to 1912, the plaintiff has been the owner of the dominant tenement, and during the most of that time Heywood, his grantor, was the owner of the servient tenement, and yet the plaintiff's right to have the water thus flow to him has never been questioned until the defendant shut off the supply in July, 1912, which was the occasion of these proceedings. This fact of continuous and unquestioned user for so long a period of time fortifies the contention of a grant by implication.

The defendant however contends that whatever the rights of the plaintiff might have been if the source of supply was upon the defendant's land, no easement was created here because the defendant neither owned nor controlled such source. This contention fails to note the distinction between the passing of an easement as an appurtenance and by implication. The reason why a deed is held not to convey as an appurtenance rights in lands other than of the grantor, is that the habendum clause cannot enlarge the grant, and if rights in another's land have already accrued and become a part of the estate granted, before the deed is given, then they pass with it; otherwise not. This is familiar law, as in *Spaulding* v. *Abbot*, 55 N. H., 423, where the defendant conveyed to the plaintiff a tract of land with buildings thereon, supplied with water from a spring on the land of H, by aqueduct, and it was held in an action for covenant broken that the word appurtenances in the habendum could not be construed to convey an easement in the land of H, which, not having ripened into a legal right, had not become legally attached to the premises conveyed. The same rule was followed in *Bumstead* v. *Cook*, 169 Mass., 410, also an action for covenant broken, where it was held that where A buys land of B, who has previously connected the land unlawfully with a public sewer, no right to use the sewer passes as an appurtenance, as he had no right in it which he could convey. But this line of cases, the soundness of which is not controverted, has no application to the case at bar. The plaintiff here is not claiming as an appurtenance some right in the land of a third party, but simply as an easement by necessity the right to have the water pipe supplying the granted premises remain in the same con-

dition as when the deed was given.   The plaintiff does not claim that any easement in the water itself was granted as an appurtenance under his deed, but does claim an easement in the maintenance of the pipe whereby the water can continue to flow to his premises in the same manner as when they were bought in 1893.   In short he does not ask an easement in what his grantor did not own and control, but in what he did.   The source of supply being a public service corporation, he is thereby assured that his necessities will be met.   The plaintiff's rights in the pipe independent of the source of supply is established by authority.   In *Philbrick* v. *Ewing*, 97 Mass., 133, the Court held that pipe even extending through land of a third party, passed as a fixture annexed to the house, and the fact that the owner of the house had no right to the water except by contract did not affect his right of property in the pipe.   In *Johnson* v. *Knapp*, 146 Mass., 70, the distinction is sharply made.   In that case when the deed was given, an aqueduct or pipe led from a well or spring on the lot of one Emory, through the Williams lot to the land conveyed to the plaintiff and through and beyond that and through the Flint lot and the Clark lot to the dwelling house upon the Pomeroy lot, and supplied water from the Emory spring to the dwelling house upon each of these lots.   In discussing the rights of the parties the Court say:

"It is true that the grant by Emory to William Brooks was limited to the right to take water for the use of the plaintiff's land, and that the right to take water for the use of the Pomeroy house was not appurtenant to the plaintiff's land, and Carpenter as owner of that land, had no right to grant it and a grant of it cannot be implied so as to create an easement in the land.   But the right to maintain pipes in the land is distinct from the right to take water from the aqueduct on the land and is a right which Carpenter could have granted without the right to take the water.   The right to take the water could be derived only from the owner of the Emory land; the right to maintain the pipes could be derived only from the owner of the plaintiff's land, and a grant of the latter without a grant of the former may be implied.   .   .   .   We think that a grant of the right to maintain the pipe in the plaintiff's land was implied in the deed to Pomeroy."   The same case was again before the Court in 150 Mass., 267, where upon additional facts presented a different con-

clusion was reached as to the rights in the spring, and the implication of a grant, but in no way overruling the previous decision so far as the above quotation is concerned.

Without further discussion it is sufficient to say that the facts in the case at bar fully conform to the requirements in the decided cases and warrant the conclusion of an implied grant. The entry must therefore be,

> *Bill sustained with costs.*
> *Perpetual injunction to issue.*
> *Decree accordingly.*