## ZEILDA FORSEE INVESTMENT CO., et al, Appellants, v. ST. JOSEPH GAS CO., Respondent.

**Kansas City Court of Appeals, April 30, 1917.**

1. **PUBLIC SERVICE CORPORATIONS: Gas Company: Duty to Extend Mains.** A public service corporation engaged in supplying gas to the people of a city by means of pipe lines laid in the street under a franchise is not under the absolute or unconditional duty of extending its mains to new territory whenever requested, without regard to the reasonableness of the demand, in the absence of anything in the nature of a special contract or obligation on its part requiring it to do so.

2. ———: ———: ———: **Reasonableness of Demands for Extensions.** The reasonableness of a demand upon a public service corporation, like a gas company, to extend its mains to other uncovered portions of the city is a question for the courts to determine, depend-

ing upon the expense involved, the number of customers likely to be served and the probable revenue to be derived from the extension as compared with the necessary preliminary outlay and the likelihood of the company receiving a reasonable return thereon.

3. ———: ———: ———: ———: **Contract with Customer for Extension of Main: Validity: Action to Recover Money Paid upon Completed Contract for Extension.** A gas company had a rule not to make an extension unless those desiring it would first advance the cost thereof and receive in payment the amount paid for gas within a certain limited time. Under this rule plaintiff contracted for an extension to certain undeveloped territory and after performance of the contract sued for the money expended in building the extension on the ground that said contract was void, said rule having been deemed by the Public Utilities Commission to be unjust and discriminatory. *Held,* that as the duty of the public service corporation to extend its mains was not absolute or unconditional, the contract was not void in the absence of facts showing that the company was bound to extend its mains on request, and the contract having been performed and the money paid on the strength of it, the money could not be recovered. The fact that the Public Utilities Commission has decided that a universal rule of the character indicated is void, does not affect the question of whether the particular contract in question made under that rule was void and without consideration.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen,* Judge.

AFFIRMED.

*John E. Dolman* for appellants.

*William E. Strongfellow* for respondent.

TRIMBLE, J.—The appeal herein is from the action of the trial court in sustaining a demurrer to plaintiff's petition. It was filed February 19, 1916, and alleged that defendant was a public service corporation engaged in supplying gas for domestic consumption in St. Joseph, Mo., by means of pipe-lines in the streets, under a franchise granted to it by said city; that prior to 1907, defendant made extensions of its gas mains at its own expense, it, at that time, supplying artificial

gas at $1 per 1000 cubic feet; but that in the year 1907 it ceased supplying artificial gas and began furnishing natural gas at forty cents per 1000 cubic feet and at the same time ceased to make extensions of its gas mains at its own expense but adopted a rule refusing to so extend its mains, and requiring persons outside the district in which mains already existed, but within the city, to lay such extensions at their expense but under the supervision of the defendant and according to its rules regulating the construction of said gas mains.

The petition further alleged that on and prior to July 2, 1912, plaintiffs were each engaged in the real estate business in St. Joseph, Missouri, and were the owners of large tracts of land in a certain section of said city, and on account of the growth of the city in that direction the demand for property in said section had become very great, but, although said locality was supplied with water and electric light and had paved streets, it was impossible for plaintiffs to develop their said property without gas for domestic purposes; that thereupon plaintiffs requested defendant to extend its gas mains so as to serve the community in which their property was located and enable them, the plaintiffs, to carry on their said real estate business, but that defendant refused to extend its mains unless plaintiffs would themselves pay for the extension on the terms of a certain agreement set out as Exhibit A; this agreement consisted of an offer made by the defendant and accepted by the plaintiffs, and signed by all parties, and reading as follows:

"The St. Joseph Gas Company hereby agrees to turn the gas into a four-inch (4-inch) pipe laid by you in Twenty-second street from Jones street to Lover's Lane (this pipe to be laid under the rules of the Gas Company governing such work), and to refund to you one-half of the amount paid for gas consumed on the above line of main for a period of three years from the time the gas is turned into the main; provided, however, that the total amount so refunded by the Gas

Company shall not exceed the cost of said work. The cost of said work having been estimated at the rate of fifty cents (50c) per foot, that amount is agreed upon as to the maximum to be refunded by the Gas Company in any event. If there is not sufficient gas consumed on said line of main within said three years for one-half of the charge of same to fully pay the agreed amount, namely fifty cents (50c) per foot, the unpaid balance of the cost of said main is to be waived by you, and the main is to become the property of said Gas Company. The computation will be made and paid at the end of the period of three years according to above terms."

The petition then alleged that although plaintiffs protested against said rule, they were compelled, in order to develop and carry on their said real estate business, to accede to said rule and did accede to it, and constructed a four-inch gas main on Twenty-second street from Jones street to Lover's Lane at a cost to plaintiffs of $2850, which main then became a part of defendant's general system of gas mains and which it now claims to own without having paid plaintiffs any consideration therefor whatsoever; that plaintiffs have demanded of defendant payment of said sum of $2850 but have been refused.

The petition further alleged that said rule or regulation of defendant not to extend its mains to those parts of the city where the system had not yet reached, except at the cost of persons residing in such parts, was a violation of law and was made for the purpose of compelling such persons residing or having property in such parts of the city to extend defendant's system of gas mains at their expense, when, under the law and defendant's franchise, it was the defendant's duty to do this at its expense; that said rule or regulation of said defendant and the acceptance thereof by plaintiffs, in this particular case, was never approved by the Public Utilities Commission of the City of St. Joseph nor by the Public Utilities Commission of the State of Missouri, and plaintiffs' acceptance of the

terms of said rule or regulation was contrary to law, and was void and of no effect.

The petition further alleged that on or about the 31st day of January, 1916, the Public Service Commission of Missouri, after a full hearing thereon instituted by the city at the request of plaintiffs and others, decided and declared said rule or regulation to be unjust, discriminatory and preferential, and prohibited the further enforcement thereof. Wherefore, plaintiffs prayed judgment for said $2850 with interest at 6% from July 2, 1915.

It will be observed that there is no allegation that the defendant has not carried out its part of the contract, nor that the defendant has sought to evade its terms and has not paid, or is unwilling to pay, whatever is due plaintiffs thereunder. The execution of the contract is admitted but plaintiffs allege that it is illegal and void and they ask a return of the full amount of the money they expended under its terms in constructing said main together with interest thereon, although the petition shows that the contract was made long enough before suit was brought for it to have become fully executed. It is true, the petition says the defendant now claims to own said pipe-line without having paid plaintiffs any consideration therefor, but, so far as appears from the petition, this may be because no money was paid to defendant for gas consumed on said line within the three years specified in the contract. There is no allegation that any gas was ever sold therefrom or that there is, or ever was, a single customer using gas on said line. However, these preliminary observations have no *direct* bearing upon the real meat or gist of plaintiffs' complaint, and they are made merely to eliminate the thought that there possibly could be a theory on which plaintiffs might, under the wide and flexible scope of an action for money had and received, be entitled to recover at least a portion of the pipe-line's cost even if some of plaintiff's contentions are not entirely tenable.

The real theory of plaintiffs' petition is that it was the defendant's *unconditional* or *absolute* duty to extend its pipe lines to plaintiffs' property, so that it might be developed and their real estate business advanced, upon plaintiffs' request for such extension and whenever said request should be made. There are no *facts* alleged in the petition which show that such a request was a reasonable one, nor does it state, even as a conclusion of law, that the request was reasonable. The petition nowhere asserts any facts to even show that there are any persons, residing in the territory to which the extension is desired, who will become either certain or prospective consumers of gas, much less does it say that there is a sufficient number to create a reasonable expectation that the additional consumption of gas created thereby will warrant or justify the expense of the extension. It is true, the petition says it was defendant's duty to make the extension but this is the mere statement of a legal conclusion in the absence of facts showing such duty. The only facts stated are that defendant is a public service corporation engaged, under a franchise, in supplying gas to the city, that plaintiffs in order to develop their property requested defendant to extend its mains thereto, but that defendant, in violation of law, refused to do its duty in that regard. So that, unless it was defendant's unconditional or absolute duty to make the extension under those circumstances, the defendant's duty to accede to plaintiffs' request does not appear from the petition. We think it is apparent from this that the petition is bottomed upon the theory that it was defendant's absolute duty to make the extension upon request regardless of the cost of such extension or the prospect of return thereon and regardless of any other condition or consideration. Of course, it is only upon the theory that it was defendant's legal duty to make the extension, and that plaintiffs were in a sense compelled, under the circumstances, to make it for the gas company, that the contract can be declared void or the money paid thereunder be recovered.

The rule of law is that a gas company "is not bound to extend its mains or pipes to territory not occupied by it, unless a statute or a binding ordinance, its charter or a contract requires it to do so, even though it have the privilege to occupy any street or all the streets of the municipality. But the matter of extension of mains almost universally is governed by a statute or the company's contract (usually embodied in an ordinance) with the municipality. Sometimes the municipal governing body has the power to order and enforce an extension of the mains; and in other instances the gas company is bound to extend a main only upon application of a certain number of persons agreeing to take gas." [Thornton on Oil and Gas, sec. 529.] Even where the matter of supplying gas to property not abutting upon the company's lines is regulated by statute, a condition of the requirement is that the property be "within a reasonable distance," and what is reasonable is a question for the courts. [Ibid., sec. 528.] In the case at bar the distance, judging from the expense, must have been great, and, of course the reasonableness of the distance would be largely determined by the number of customers likely to be served and the probable revenue derived from the extension.

The rule set forth in Thornton, supra, is announced in Board of Water Comrs. v. Bloomfield, 84 Conn. 522. In Village of Upper Alton v. Alton Gas etc. Co., 165 Ill. App. 333, one of the grounds for sustaining the demurrer to plaintiff's petition was that it nowhere alleged that a sufficient demand for gas existed, in the extension sought, to insure the company a reasonable return for the necessary outlay. In Public Service Corp. v. American Lighting Co., 67 N. J. Eq. 122, l. c. 131, it is held that the obligation on a gas company to lay down a supply pipe to furnish gas to a dwelling or tenement is "subject to the limitation that there shall exist a reasonable expectation that the consumption of gas shall be sufficient to warrant the necessary preliminary expenditure."

In Minneapolis General Electric Co. v. City of Minneapolis, 194 Fed. 215, 219, the theory that it was the absolute duty of a public service corporation to extend its service conduits, whenever requested, was denied; and it was held that even if this duty were enjoined by ordinance, not in the nature of a special contract with the corporation, it would be void and of no effect. The same ruling is, in effect, announced in Lawrence v. Richards, 111 Me. 95, and in Watson v. French, 112 Me. 371. [See, also, Smith v. Capital Gas Co., 132 Cal. 209.] The right of an inhabitant of a municipality, or of the inhabitants of a particular portion of it, to compel a water company to extend its mains, is not an absolute and unqualified right but is a relative one. [Lukrawka v. Spring Valley Water Co., 169 Cal. 318.]

It does not follow, from the allegation that the Public Utilities Commission of Missouri has decided that the rule which the company adopted in reference to the extension of its mains was unjust, that there is, therefore, an absolute duty imposed upon the company to make extensions under any and all circumstances. A rule that *no* extensions would be made at the company's expense under *any* circumstances is no doubt unjust, but that is a very different thing from the rule that *every* extension must be made, when such is requested, no matter what may be the circumstances or conditions.

It cannot be successfully maintained that the necessary inference, flowing from all the facts alleged in the petition, is that there was, at the time the contract was made, a large enough demand for gas in the territory in question to make it defendant's duty to extend its main. On the contrary, the inference to be gathered from the facts alleged is that there were no customers there then, but that plaintiffs, in order "to develop their said property" and to "meet the growing demands of the city," wanted the main extended. In other words, that, according to plaintiffs' view, judging from the way and direction the city was growing, the plaintiffs could *in the future* dispose of their prop-

erty to better advantage if their property had a gas main extended to it. This is not an allegation, nor does it carry the inference, that the territory affords a reasonably sufficient demand for gas to justify the necessary outlay or that there was a reasonably certain prospect of such being the case within a reasonable time.

We think the petition was demurrable and that the action of the trial court was right. The judgment is, therefore, affirmed. All concur.