**James O'CONNELL et al.**

v.

**Stanley LARKIN.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1987.
Decided Oct. 30, 1987.

---

· Sandra Hylander Collier (orally), Silsby & Silsby, Ellsworth, for plaintiffs.

Nathaniel N. Fenton (orally), Fenton, Chapman, Fenton, Smith & Kane, Bar Harbor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Plaintiffs James and Carol O'Connell and defendant Stanley Larkin own adjoining properties in Bar Harbor, and at issue here are their respective rights in a triangular-shaped space on Larkin's land located between Larkin's house and a driveway now owned by the O'Connells and conveyed by the common predecessor in title. The O'Connells' driveway extends from a public street along and adjacent to Larkin's land to the O'Connells' rental units located toward the back of their lot. The O'Connells contend and the Superior Court, Hancock County, held that an easement over some part of Larkin's triangular-shaped parking area was created in their favor by implication in 1963.

Larkin appeals from that judgment, which declared that the O'Connells enjoyed an implied easement over that triangular-shaped portion of the defendant's lot and enjoined Larkin from interfering with the O'Connells' use of the easement. Larkin contends on appeal that in 1963, when the parties' common predecessor in title severed what is now the O'Connells' property from what is now Larkin's, no access rights benefiting the plaintiffs' parcel were created, other than the nineteen-foot wide driveway expressly conveyed to the O'Connells' predecessor. We agree with Larkin and vacate the judgment.

## FACTUAL HISTORY

In 1963 Agnes Brewer, the common predecessor in title to the parties in this case, owned a parcel of land on the westerly side of Roberts Avenue in a congested residential area of Bar Harbor. The property consisted of her residence at 17 Roberts Avenue, located in the northeastern corner of the lot, and several rental units toward the rear of the lot. At the time Miss Brewer divided her parcel in 1963, the driveway at issue in this litigation was bordered on the south by three large elm trees located along the southern edge of

the original Brewer lot. One of these trees was located about five feet from the southern edge of the Brewer lot into the driveway. The rental units were "either all or mostly vacant" when Miss Brewer divided her parcel and there were several parking places near the rental units. Miss Brewer did not own a car at the time she divided her parcel in 1963, although in the 1950's she had parked her car in the disputed triangle of land along the southern side of her house.

On April 13, 1963, Agnes Brewer executed a memorandum of agreement by which she contracted to sell part of her land and several buildings thereon to Rentals, Inc., the O'Connells' predecessor in title. This property was to the rear of the residence and contained the rental units. To be retained by Miss Brewer was the house and lot on the northeast corner of the property known as 17 Roberts Avenue, the property now owned by Larkin. The memorandum further provided as follows:

> It is also understood and agreed that access to the property from Roberts Avenue over existing driveway will be provided either through deeded right of way or through outright conveyance of the driveway as mutually agreed upon included in the selling price.

Pursuant to the memorandum of agreement, by a deed dated June 17, 1963, Miss Brewer conveyed the parcel to Rentals, Inc. Included in the conveyance was a corridor about nineteen feet wide providing access to the rental units from Roberts Avenue. The deed included no reference to a right of way in favor of the conveyed property, although it did include an easement in favor of the property retained by Miss Brewer.[1]

In 1978, Rentals, Inc., conveyed its property to the O'Connells. Larkin took title to the former Brewer house, known as 17 Roberts Avenue, in 1980. When he purchased the property, Larkin understood that he could park along the south side of his house in the triangular-shaped area adjacent to the 19–foot corridor that Miss Brewer had conveyed to Rentals, Inc., in 1963. There was and is no other parking space on the premises.

Soon after Larkin purchased 17 Roberts Avenue, the O'Connells contested his right to park in that area alongside his house, claiming that Larkin's use of the area interfered with the ingress and egress of the O'Connells and their tenants. Larkin eventually sought legal counsel and posted on the disputed area in October of 1980 a notice to prevent the acquisition of an easement.[2]

The O'Connells continued to object to Larkin's parking over the course of the next three years. Finally, in August of 1983 Larkin had three steel posts placed within the triangular-shaped area along the south side of his house and within the boundaries of his property. The posts were intended to insure that Larkin parked on his own property and to prevent others from driving over his property. Since the installation of the posts the O'Connells and their tenants have experienced difficulty backing out of the driveway, vehicles have collided with the posts on occasion and oil trucks have had a difficult time backing in to the O'Connells' property to deliver fuel.

On March 2, 1984, the O'Connells filed a complaint against Larkin seeking injunctive relief and damages for trespass (Count I) and nuisance (Count II) caused by the placement of the three steel posts. The O'Connells also prayed for a declaratory

---

1. The grantor, Miss Brewer, reserved to herself, her heirs and assigns forever the following as appurtenant to the 17 Roberts Avenue property: A right of way for all purposes of a way in common with Rentals, Inc., its successors and assigns, over a roadway as it now appears on the ground running from Roberts Avenue to the end of said way with the right to turn an automobile around on property of Rentals, Inc., but not to block said way by parking a vehicle thereon.

2. 14 M.R.S.A. § 812 (1980) provides that posting a notice to prevent an easement tolls the 20–year prescriptive period and thereby prevents a prescriptive easement from ripening. The posting in this case by Larkin prevented the O'Connells from acquiring a prescriptive easement by open and continuous use. *Dartnell v. Bidwell*, 115 Me. 227, 232, 98 A. 743 (1916).

judgment (Count V) establishing the rights of the respective parties in the disputed premises.[3]

██ After a non-jury trial, the court found that there was severance of unity of title in the dominant and servient portions of the land, and that the use of the triangular piece of land by the O'Connells and their predecessors had been open and continuous. In addition, the court found that the use of the triangular parcel by the O'Connells and their predecessors was necessary to the use and enjoyment of their property, in that without the claimed easement to cross over it, they would be put to the expense of removing the three elm trees[4] and constructing a retaining wall because of the topography of the land in order to enjoy full and complete access to their property. The court acknowledged that the hardship did not constitute strict necessity as commonly understood in determining whether easements have been established by necessity.[5]

Based on those findings, the court found that Miss Brewer had intended to create an easement to benefit the plaintiffs' land, and determined and declared that there was a quasi-easement in the triangular piece of land created in favor of the plaintiffs' land (Count V). The court granted injunctive relief on Counts I and II, and after allowing the plaintiffs to orally amend their complaint to add a Count VI for trespass, found that the defendant had trespassed and interfered with the quasi-easement by parking his car in the triangular piece. The court found no monetary damages. Larkin appealed the judgment.

3. Additional Counts III and IV, praying for reformation of the deed and reformation of the deed to enforce an option respectively, were decided in defendant's favor on his motion for partial summary judgment.

4. The most obstructive of the trees was located about five feet into the nineteen-foot wide driveway, leaving a width of about fourteen feet completely unobstructed.

5. In order for an easement of necessity to be implied, the use of the easement must be strictly

## LEGAL ANALYSIS

██ An easement may be created in several ways: 1) by grant, express or implied, where the grantor benefits the conveyed land with an easement over land retained by the grantor, 2) by reservation or exception in the deed of conveyance, where the conveyed property is made subject to an easement to benefit the land retained by the grantor or other land or persons, 3) by prescription,[6] 4) by statutory proceedings or 5) by estoppel.[7] *Brown v. Dickey*, 106 Me. 97, 100, 75 A. 382 (1909). In this case there was no express grant and the easement claimed by the O'Connells was found by the court to have been created by implication. To determine whether an easement has been impliedly created the proper focus is upon the probable intent of the parties. *LeMay v. Anderson*, 397 A.2d 984, 987 (Me.1979). The probable intent must be inferred from the circumstances of the transaction. *LeMay*, 397 A.2d at 987–88.

In order for such an implied easement to be created there must be severance of unity of title between the dominant estate (the property benefited by the easement) and the servient estate (the property subject to the easement). *Brown*, 106 Me. at 101, 75 A. 382. There was a severance of title here when, in 1963, Miss Brewer, the common predecessor in title, conveyed part of her land to Rentals, Inc. The probable intent, if it existed, must be inferred from the circumstances existent at that time. *LeMay*, 397 A.2d at 989.

██ Although there was and is no strict necessity on the part of the O'Connells and their predecessors to use a part of the triangular piece for access to their land,[8] the trial court inferred an intent to create

necessary for access to the conveyed land. If there are other access alternatives, even if expensive, no such easement can be implied. *York v. Golder*, 128 Me. 252, 255, 147 A. 41 (1929); *Watson v. French*, 112 Me. 371, 375, 92 A. 290 (1914).

6. *See supra* note 2.

7. Neither statutory proceedings nor estoppel was involved here.

8. *See supra* note 5.

an easement from all the other circumstances. The court found that at the time of the 1963 conveyance and thereafter, part of the triangular piece had been used for access to the back part of the Brewer property now owned by the O'Connells. In addition, the court found that for the O'Connells' predecessors to enjoy full and free access to their land without crossing over part of Larkin's triangular parcel, they would have been put to substantial expense and inconvenience in removing trees and constructing a retaining wall. The evidence supports that finding at least to the extent that there would be some expense and inconvenience. The court is also correct in concluding that necessity of use need not always be strict and absolute in order for an easement to be created by implication. Rather, it is only a circumstance resorted to to show the intention of the parties. *Doten v. Bartlett*, 107 Me. 351, 354, 78 A. 456 (1910).

■ However, in searching for a probable intent to create an easement, the trial court overlooked the express intent of the parties pertaining to access as set down in the memorandum of agreement and the deed from Miss Brewer to Rentals, Inc. In the memorandum of agreement Miss Brewer agreed to provide Rentals, Inc., with access to the rental units over an existing driveway *"either* through deeded right of way *or* through outright conveyance of the driveway" (emphasis added). The deed executed pursuant to the memorandum conveyed to the O'Connells' predecessor in title a corridor nineteen feet wide, an "outright conveyance" of the existing driveway, one of the two access alternatives expressed in the memorandum. Although Miss Brewer expressly reserved a right of way to benefit her retained land, no such right of way to benefit the O'Connells' land was contained in the deed. The intent of the parties is clearly expressed in the memorandum of agreement and the deed. When the express conveyance of the nineteen-foot wide driveway so clearly provides access to the O'Connells' property, the court erred in inferring Miss Brewer intended to additionally create an access easement over her retained land to benefit

the O'Connells' land, when that easement was not strictly necessary to the use and enjoyment of the O'Connells' property.

The entry is:

Judgment vacated.

Remanded to the Superior Court for entry of judgment for the defendant.

All concurring.