Ronald BOWERS, et al.

v.

Helen D. ANDREWS.

Supreme Judicial Court of Maine.

Argued March 9, 1989.

Decided April 7, 1989.

Ricky L. Brunette (orally), G. Charles Shumway, Brunette, Shumway, Romanow & Ryer, Portland, for plaintiffs.

Richard J. O'Brien (orally), Linnell, Choate & Webber, Auburn, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

After Helen D. Andrews, pursuant to 14 M.R.S.A. § 812 (1980), served notice to prevent acquisition of a prescriptive easement to use the sewer pipe running across her land, Ronald and Gail Bowers obtained a declaratory judgment in the Superior Court (Androscoggin County; *Alexander, J.*) that they already have an easement by implication to use the pipe. Andrews appeals. Although until today we have not expressly overruled earlier cases declaring strict necessity to be a prerequisite to the creation of an easement by implication, our more recent cases have come into line with the majority rule in American property law that strict necessity is not required when the grantor's intent is proven by alternative means. We are persuaded that the majority view is the correct one, and we affirm the judgment.

The properties involved, located on the eastern shore of Tripp Lake in Poland, were once part of a cottage colony owned by Saul Plavin, with several buildings connected to a common well and a common waste disposal system. After Plavin's death his successors in interest ("the Plavin Estate") subdivided the property, selling the cottages off individually on lots with lakeshore frontage of about 65 feet. The Gosses, the former owners of the Bowers cottage, bought that cottage from the Plavin Estate on October 26, 1964, and Andrews bought the cottage next door on December 14 of the same year. In 1976 Andrews put in her own individual septic system and disconnected from the common sewer. She served her notice to cut off prescription on the Gosses on July 26, 1984, 19 years and 9 months after unity of title between the properties was severed.[1] Two weeks later, the Gosses closed their sale to Mr. and Mrs. Bowers, plaintiffs in this action.

The pipe Andrews seeks to remove comes into the Bowers property from the south and continues across the parties' lots, surfacing behind the Andrews cottage, to a pumping station on the lot lying immediately to the north of the Andrews lot. A second pipe, serving other cottages, comes into the pumping station from the other side. The pumping station sends the effluent away from the lake, to a leach bed across the road to the east. The witnesses gave conflicting testimony as to the circumstances of the 1964 sales and the feasibility of putting in individual septic systems for the cottages that are still tied into the common sewer. The Superior Court concluded that the common grantor had intended to create an easement for each grantee, basing that conclusion primarily on a factual finding that

> one of the representations made to [both the Gosses and Andrews] was that this sewer line was there and available. ...
> It's clear that representation was made, and it was made as an intentional inducement for the sale. Further, there's no question that that representation was relied on, viewed as significant by [both] parties....

Andrews' arguments regarding the conclusions to be drawn from the evidence were for the trial court to evaluate. The trial court did so, and found adversely to her. The record in no way shows the court's findings to be clearly erroneous, and the only real question remaining is one of law: Is the Superior Court's decision that Mr. and Mrs. Bowers have an implied easement to use the pipe legally reconcilable with its finding of fact that they had failed to prove "any extreme economic hardship to be imposed if the system was cut"? In spite of plaintiffs' failure to

---

1. A neighboring cottage further to the south that apparently uses the same common sewer pipe had, however, been in separate ownership from the Andrews cottage by that date for more than 20 years. On cross-appeal plaintiffs challenge the Superior Court's decision that the Gosses could not establish a prescriptive easement by tacking their own use onto the joint use with their neighbors. Because we affirm the judgment declaring an easement by implication in plaintiffs' favor, we do not reach their cross-appeal asserting the alternative prescriptive easement.

prove the strict necessity of the sewer easement, the Superior Court found that the Plavin Estate in subdividing the cottage colony intended each of the grantees to have a right to the continued use of "things already in the ground and already ... basically essential to the use of the property."

■ It would be grossly unfair to buyers who have reasonably relied on such an intention if a downstream landowner could sever the functioning sewer system merely because no recorded easement appears in the registry of deeds. For this reason the law recognizes the grant of an easement by implication in circumstances where (i) property when in single ownership was openly used in a manner constituting a "quasi-easement," [2] (ii) the grantor who severed unity of title manifested an intent that the quasi-easement should continue as a true easement, and (iii) the buyers of the allegedly dominant estate have not discontinued their use.

But the law must also respect the interest of the owner of the allegedly servient estate. An analysis based strictly on "reasonable reliance" is conclusory, begging the question of who would be acting reasonably: the party relying on historical physical conditions or the party relying on record title. "The vital question," as we have consistently recognized, "is, did the parties intend that the right now claimed ... should be granted?" *Watson v. French*, 112 Me. 371, 374, 92 A. 290, 291 (1914). We must look to "all the circumstances of the case" from which that intent

may be inferred. *Id.* In particular, "[o]ne of these circumstances, and oftentimes the controlling one, is the necessity" of the use to the party claiming the easement. *Id.* at 375, 92 A. at 291. *Watson v. French* went further, however, declaring that "however lenient other Courts may be ... the rule has been firmly established in this State ... that there can be neither implied grant nor implied reservation unless the easement be one of strict necessity." *Id.* at 375, 92 A. at 291–92. Fifteen years later, we reaffirmed that "strict necessity" is one of the "controlling elements in determining whether an implied reservation exists."[3] *York v. Golder*, 128 Me. 252, 255, 147 A. 41, 42 (1929).

We later retreated from the categorical language of *Watson v. French.* In 1979, in *LeMay v. Anderson*, 397 A.2d 984, 987 (Me.1979), emphasizing that "the focus is properly upon the probable intent of the parties," we described "the so-called elements of an implied reservation of an easement," such as strict necessity, as "[c]ertain circumstances that evidence an intent to create an easement." *Id.* at 988. Having found strict necessity to exist in that case, however, we had no occasion to decide whether other circumstances might evidence the same intent.[4] Only in *O'Connell v. Larkin*, 532 A.2d 1039 (Me.1987), did we finally, if only tacitly, disapprove of the strict necessity rule of *Watson v. French* by saying:

[N]ecessity of use need not always be strict and absolute in order for an easement to be created by implication. Rath-

---

**2.** Quasi-easements "are existing conditions in the land retained the continuance of which would be so clearly beneficial to the land conveyed that they would be presumed to be intended. These easements must be such as are apparent in the sense of being indicated by objects which are necessarily seen or would be ordinarily observable by persons familiar with the premises." *Brown v. Dickey*, 106 Me. 97, 101, 75 A. 382, 384 (1909). *See also Tiffany on Real Property* § 781 (3d ed. 1939 & Supp.1989) ("Implied creation of easements corresponding to pre-existing quasi-easements").

**3.** Nonetheless, even when we voiced our strongest adherence to a rule of strict necessity, the true effect was less harsh. In *Watson v. French*

itself, for example, we found the requisite strict necessity to continue the use of an existing water supply pipe without imposing any duty on the plaintiff to investigate possible alternatives proposed by the defendant. 112 Me. at 375–76, 92 A. at 291.

**4.** In *Ouellette v. Bolduc*, 440 A.2d 1042, 1046 (Me.1982), we concluded, for the first time since 1909, that there was *no* implied easement because strict necessity had *not* been proven. We did this, however, in exceptional circumstances. The dispute was over an executory purchase and sale contract, and the owner had manifested in subsequent negotiations an express intent not to grant an easement.

er, it is only a circumstance resorted to to show the intention of the parties. *Id.* at 1043. We thus recognized a distinction between easements by necessity and easements by implication arising from prior quasi-easements. *See id.* at 1042 n. 5.

■ Nearly all jurisdictions now distinguish those two forms of implied easements. The basis for an easement by necessity, as we did correctly explain in *Watson v. French*, is "the general principle that the grant of a thing ... is presumed to include ... whatever right the grantor had ... without which the thing granted would prove practically useless to the grantee." 112 Me. at 374–75, 92 A. at 291. The creation of an easement by necessity, exemplified by the case of a "landlocked" lot conveyed out of a larger parcel, does not depend on any preexisting quasi-easement, or even on the intent of the grantor. *See Hollywyle Ass'n, Inc. v. Hollister*, 164 Conn. 389, 400 & n. 4, 324 A.2d 247, 253 & n. 4 (1973); *Schwob v. Green*, 215 N.W.2d 240, 244 (Iowa 1974). *See also Jost v. Resta*, 536 A.2d 1113, 1115 (Me.1988) (no easement by necessity found).

■ In contrast, the implication of an easement arising from a prior quasi-easement depends on the necessity of the continued use only to the extent that that factor bears on whether it is reasonable to infer that the parties to the conveyance had regarded the continuation of the use as so obvious that it would go without saying. By the majority rule, therefore, an easement implied from a quasi-easement is not subject to a requirement of strict necessity, but only to the lesser requirement that the easement be "important for the enjoyment of the conveyed quasi-dominant parcel." 3 *Powell on Real Property* ¶ 411[2] (1985 & Supp.1988).

When this prerequisite is phrased in terms of "necessity," a court is no longer primarily considering the problem of implication from a quasi-easement but has crossed over (perhaps unwittingly) into the domain of easements by necessity. *Id.* Instead the court must apply "a flexible test. The more pronounced a continuous and apparent use is, the less the degree of convenience of use necessary to the creation of an easement by implication." 2 *American Law of Property* § 8.43 (A. Casner ed. 1952). For an easement to be implied from what might otherwise be disparaged as "mere convenience," necessity must be replaced by other equally persuasive indicia of the grantor's intent.

■ In the case at bar, the Superior Court supported its decisive finding of fact, that the common grantor promoted the sale of individual cottages on the representation that they enjoyed a right to use the existing sewer system, with inferences from other circumstances of the conveyances: first, that the properties were marketed simultaneously; second, that the subject of the dispute is "things already in the ground" that could reasonably be expected to remain there; and third, that all of the cottages benefited from the use of the system. Those factors are among those commonly used by courts in construing a grantor's intent. *See generally Restatement of Property* § 476 with comments and notes (1944 & Supp.1988).

The importance of the first factor derives from the canon of construction that ambiguous deeds are to be construed in favor of the grantee. *See LeMay v. Anderson*, 397 A.2d at 987; *American Law of Property* at § 8.39. Thus, implied grants of easements are favored as compared with implied reservations, and easements are most readily inferred when, as in the case at bar, the easement is claimed by one contemporaneous conveyee against another:[5] "It is reasonable to infer that a conveyor who has divided his land among simultaneous conveyees intends that very considerable privileges of use shall exist between them." *Restatement* at § 476 comment f, *quoted*

---

5. Because the Bowers/Goss lot was conveyed before the Andrews lot, the easement in question may technically be characterized as an implied grant; and it could be characterized as an implied reservation had those sales taken place in the opposite order. That fortuity, however, in no way bears on any intent behind the conveyances; either way, they still were simultaneous in their intent and in their practical effect.

*in Powell on Real Property* at ¶ 411[1] n. 6.

Second, the use here, unlike, for instance, a claimed right of way over an unimproved path with a readily available substitute, is discrete and of a nature generally considered relatively permanent. "The inference of intention [to create an easement] is strengthened by the extent to which a prior use has resulted in a physical adaptation of the premises to such use." *Restatement* at § 476 comment i. In *Warren v. Blake*, 54 Me. 276 (1866), a leading case in the development of the old "strict necessity" rule, we followed Massachusetts precedent holding that conveyances by metes and bounds are as a rule to be construed literally against any claim of implied reservation of an easement, absent strict necessity. Nevertheless, we acknowledged "exceptions [to that general rule for] things appendant to the granted premises, and which are naturally or necessarily annexed to them, such as a natural watercourse, and perhaps an artificial conduit, running to the granted premises." *Id.* at 288 (paraphrasing *Grant v. Chase*, 17 Mass. 443, 447–48 (1821)).

The third supporting factor present here is the reciprocity of use. *See Restatement* at § 476 comment h. Even though the Andrews lot, adjacent to the pumping station, has borne more of the burden than has the Goss/Bowers lot, this is hardly a case where all the benefits of the sewer system accrued on one side and all the burdens on the other. In claiming an easement over Andrews' land for the benefit of their own cottage, Mr. and Mrs. Bowers thereby concede an easement over their own land for any cottages to the south that are connected to the system. Likewise the Andrews lot, though servient to the Goss/Bowers lot and any other upstream lot, is dominant over the cottage lot with the pumping station and the lot or lots with the leach bed. The Superior Court, drawing the natural inference from the twelve-year period during which Andrews took *full* advantage of that right, found that Andrews herself regarded the use of the sewer system to be a significant benefit appurtenant to her lot.

In these circumstances the Superior Court properly declared that the easements preserving the ongoing use of the existing common sewer system were created by the Plavin Estate when it subdivided the cottage colony in 1964.

The entry is:

Judgment affirmed.

All concurring.