SAMUEL WHITEHOUSE *vs.* JOSEPH S. CUMMINGS.

Kennebec.    Opinion October 2, 1890.

*Way.    Grant.    Requested Instructions.    Practice.    Easement.*

When property in land has been severed by voluntary conveyance, one portion of which is inaccessible except by passing over the other or by trespassing on the lands of a stranger, a grant of a way by necessity is presumed between the parties.

A way of necessity ceases when the necessity from which it results ceases.

An instruction to the jury is to be tested by the facts on which it is predicated.

*Trask* v. *Patterson*, 29 Maine, 499, considered.

ON EXCEPTIONS.

This was an action on the case, tried in the Superior Court for Kennebec County, to recover damages for obstructing an alleged right of way from the plaintiff's wood lot over and across the defendant's land to the highway. Plea, general issue. The verdict was for the plaintiff.

It appeared from the bill of exceptions, that one Leander Yeaton was the former owner of a lot of land in Belgrade, lying east of a certain highway called "The Winthrop Road," bounded as follows : west, by a school-house lot and by said highway ; said school-house lot being two rods square, lying between said Yeaton's land and said highway at Yeaton's south-west corner ; south, by land of Zimri Yeaton and land of one Taylor ; east, by land of Knowles' heirs, and north by land of J. S. Cummings.

Said lot, originally owned by Leander Yeaton, is shown by the double line on the "chalk plan." Said Yeaton also owned a homestead on the west side of said road and opposite the lot above described.

Said Yeaton sold a part of said lot of land, extending from said school-house lot on the south to land of said Cummings on the north, on December 2d, 1870, to one Kimball, who conveyed April 18th, 1881, to William Gage. This lot, so sold, was identified at the trial, and shown on the chalk plan as "Gage Lot."

Said Yeaton subsequently sold, on February 21, 1877, the homestead above mentioned, and the east end of the original lot to the plaintiff, as described and bounded in the deed, and shown on the plan as "The Whitehouse Lot." He subsequently sold, on April 16, 1878, the remaining middle portion of said original lot marked on the plan "Cummings' Lot," to the defendant.

There was no evidence that Leander Yeaton owned the lot known as the school-house lot, or had ever claimed to cross it as a matter of right; but the plaintiff introduced evidence tending to show that said Yeaton and his predecessors and successors in title for a period of more than twenty years, had, as a matter of fact, crossed said school-house lot at pleasure in making use of the way delineated on said plan, to and from the Whitehouse lot to the road. There was evidence tending to prove that at various times during different years, wood had been hauled from said Whitehouse lot to the highway, as a matter of convenience, and by permission from the adjoining owners, south over Taylor's land; west and south over Zimri Yeaton's land; west across the school-house lot; west across the Gage lot; and north across the Cummings lot. The defendant did not claim, nor was there any evidence to prove any right of way by prescription over any of the adjacent lots of Taylor on the south, Knowles on the east, or Cummings on the north, or of any way in use over said Gage lot at the time of the purchase by plaintiff.

The plaintiff also introduced evidence tending to show that at the time of the purchase of the Whitehouse lot and the home-

stead by the plaintiff, there was in existence and use, and had been for many years, a well-defined way from said Whitehouse lot to the county road; that this road crossed the railroad at grade at the only practicable place, there being a deep cut on the south and an embankment or dump on the north, and extended substantially as delineated on the plan, westerly through bars at the points S, T, and X, Y, and across the school-house lot to the county road; and there was no other way than this in existence or use except that there was evidence on the part of the defendant tending to show indications of travel at other points across land of strangers.

The plaintiff also claimed that the Whitehouse lot was entitled to a way of necessity over the Cummings lot to the county road and that this way as used was a reasonably convenient and practicable one.

It was admitted that the plaintiff used this way until it was obstructed by the defendant's building a strong fence across the head of the lane at the points X, Y, in the summer of 1886, and that the defendant has never designated any other way across his lot to the county road for plaintiff's use.

In this action, the plaintiff sought to recover damages for the building a fence by defendant, in 1886, across the east line of the school-house lot as shown on the chalk plan marked Obstruction.

1.   The court instructed the jury: "Whatever rights the plaintiff Whitehouse acquired by the deed from Leander Yeaton with respect to this middle parcel, whatever right of way he had, if any, at the time he took his deed and at the time the title of this middle piece was in Leander Yeaton, he would have after the title was transferred to this defendant Cummings; that the defendant Cummings would take the land notwithstanding he had a warranty deed, subject to any lawful easement that Mr. Whitehouse, the plaintiff, had by virtue of his deed."

The court also instructed the jury:

2.   "Where the land conveyed by one person to another is surrounded partly by the land of strangers and partly by the land of the grantor, and where the grantee, the person who

purchases the land thus surrounded has no means of access to his land thus purchased except over the land of his grantor, or by committing a trespass on the land of strangers, or by relying upon the capricious favor or uncertain permission of those surrounding owners from time to time, or subjecting himself to actions of trespass in case they refuse to give him permission,— I say to you,—that under such circumstances if the land is worth occupying, if benefit is to be derived by occupying it so that a way is necessary at all to its occupation, a way by necessity exists in favor of the grantee."

The court also instructed the jury :

3. "So far as that school-house lot is concerned, that is a matter with respect to which the plaintiff himself assumed all responsibility and risks, and it is a matter in respect to which the defendant is not required to assume any responsibility whatever. If the plaintiff is entitled to the right of way as claimed by him, although he might have difficulty in getting from the school-house lot if anybody objected, it is entirely immaterial so far as this inquiry is concerned. That is a matter to be adjusted between him and other parties and not a matter with respect to which the defendant has any concern. Now then, you will determine upon this, I may say uncontroverted testimony, whether the plaintiff had any other lawful means at the time he received his deed or at the time of the alleged obstruction, for reaching this wood land. If not, I say to you that, by implication of law the plaintiff's grantor, Leander Yeaton, conveyed to him as an incident to his deed, a right over the middle lot that Leander Yeaton subsequently conveyed to this defendant, and that after it was conveyed to the defendant, the plaintiff would still have the same right, if the necessity still existed, and it would not be removed."

The defendant requested the court to instruct the jury :

1. "That if Leander Yeaton, the original owner of the land comprised in the three lots known as the Gage lot, the Cummings lot, and the Whitehouse lot, had legal access to the road only over the part known as the Gage lot first sold, Yeaton's right of way by necessity to and from the other two

lots was over the Gage lot, and the legal right of his grantees by necessity from the back lots must be over the Gage lot and there can be no damage resulting from building a fence against the land of any other present owner than the owner of the Gage lot."

2. "That where the owner of land, entirely surrounded by land of other owners, has himself no right of way across his adjoining owners, sells a part of his estate to a grantee who is not one of the surrounding owners, such grantee takes by necessity no right of way over his grantor's remaining land."

Which requested instructions the court refused to give, except as appears in the charge. To which instructions, and refusals to instruct, the defendant excepted.

*S. and L. Titcomb*, for defendant.

No right of way by necessity exists in favor of the granted premises unless they are wholly surrounded by land of the grantor; and no such right exists if they are surrounded partly by land of grantor and partly by land of strangers. *Trask* v. *Patterson*, 29 Maine, 499; *Kahlman* v. *Hecht*, 77 Ills. 570; Dev. Deeds, § 863, and cases cited. No case holds that such grantee takes a right of way to the highway, if, in fact, his grantor himself had no such right. Yeaton had no legal right to cross the school-house lot, at any time. If plaintiff has any right of way by necessity, it must be over the Gage lot. Counsel also cited, *Patton* v. *Quanier*, 18 West Va. 447.

*Baker, Baker and Cornish*, for plaintiff.

VIRGIN, J. This is an action on the case for obstructing the plaintiff's alleged right of way of necessity across the defendant's land and a school district lot to a highway.

The defendant contends, contrary to the instruction to the jury, that the plaintiff was not entitled to a right of way of necessity over his grantor's remaining land, for the reason that, when his parcel was conveyed to him, it was bounded in part by the land of strangers and not wholly by that of his grantor. We are of opinion, however, that his contention is contrary to principle and the overwhelming current of authority.

Such a right of way of necessity as the law recognizes and upholds, is found among the numerous applications and illustrations of the old, thoroughly established general principle that, the grant of a thing is presumed to include and carry with it, as an incident of the grant, whatever right the grantor had in connection with it and could convey by apt words, without which the thing granted would prove practically useless to the grantee. It results from a grant or reservation implied from the existing circumstances in which the grantee,— or in case of a reservation,— the grantor, is thereby placed. When a landowner conveys a portion of his lot, the law will not presume it to have been the intention of the parties that the grantee shall derive no beneficial enjoyment thereof in consequence of its being inaccessible from the highway, or that the other portion shall, for like reason, prove useless to the grantor. This species of right of way, therefore, in the absence of anything to the contrary contained in the deed, becomes an incident to the grant indicative of the intention of the parties. *Pomfret* v. *Ricroft*, 1 Wm. Saund. 323, a note 6 ; *Clark* v. *Cogge*, Cro. Jac. 170 ; *Warren* v. *Blake*, 54 Maine, 276, 286 ; *Trask* v. *Patterson*, 29 Maine, 499.

Every right of way of necessity being founded on a presumed grant, none can be presumed over a stranger's land and hence none can be thus acquired. *Bullard* v. *Harrison*, 4 M. & S. 387 ; *Howton* v. *Frearson*, 8 T. R. 50 ; *Pernam* v. *Wead*, 2 Mass. 202 ; *Allen* v. *Kincaid*, 11 Maine, 155 ; *Collins* v. *Prentice*, 15 Conn. 39 ; *Seeley* v. *Bishop*, 19 Conn. 128 ; *Myers* v. *Dunn*, 49 Conn. 71 ; *Holmes* v. *Seely*, 19 Wend. 507 ; *Smyles* v. *Hastings*, 22 N. Y. 217 ; *Nichols* v. *Luce*, 24 Pick. 102 ; *Pettingill* v. *Porter*, 8 Allen, 1 ; *Schmidt* v. *Quinn*, 136 Mass. 575 ; *Oliver* v. *Hook*, 47 Md. 301 ; *Dunklee* v. *Wilton R. R. Co.* 24 N. H. 489, 505 ; *Pingree* v. *McDuffie*, 56 N. H. 306 ; *Cooper* v. *Maupin*, 6 Mo. 624 ; *Mead* v. *Anderson*, 40 Kans. 203. When, therefore, property in land has been severed by voluntary or statutory conveyance, one portion of which is inaccessible except by passing over the other,

or by trespassing on the lands of a stranger, a grant of a right of way of necessity is presumed between the parties. Godd. Ease. (Ben. Ed.) 268; Wash. Ease. (3d Ed.) 233 and cases *supra*. Any language in the opinion in *Trask* v. *Patterson*, 29 Maine, 499, which seems to militate with this doctrine can not be sustained.

But the way must be from the circumstances one of strict necessity and not one of mere convenience. *Doliff* v. *B. & M. R. R.* 68 Maine, 173; *Stevens* v. *Orr*, 69 Maine, 323; *Stillwell* v. *Foster*, 80 Maine, 333; *Allen* v. *Kincaid*, 11 Maine, 155. And as it results solely in consequence of necessity, it ceases or varies with the necessity. *Holmes* v. *Goring*, 2 Bing. 76; *Rumill* v. *Robbins*, 77 Maine, 195; *Seeley* v. *Bishop*, 19 Conn. 128; *Viall* v. *Carpenter*, 14 Gray, 126; *Abbott* v. *Stewartstown*, 47 N. H. 230.

Applying these principles to the facts it is seen that when Yeaton, owning the entire lot, conveyed the front parcel in 1870 to Kimball, he would have had no means of access from his homestead and the highway to the remainder of his lot,— presumably pasture and woodland,— provided the parcel conveyed extended across the entire width of the lot, unless the right to cross this parcel had been expressly or impliedly reserved, or unless he could pass over the land of the bounding strangers,— which latter alternative he could not claim without permission.

But the front parcel did not extend across the entire width of the lot. On the contrary, a narrow strip of land, extending along the south side of it to the school-house lot, was not included in the conveyance. This fact strongly indicates that this strip of land was intentionally excepted from the conveyance of Yeaton to Kimball, as for a way for the benefit of the remainder of the lot, so as not to burden the front parcel with a right of way across its entire length at any rate,— provided permission could be obtained to continue it across the two rod school-house lot. Moreover, that such was their actual and well-understood intention and concurred in by the school district, seems to. be made certain by the contemporaneous and long continued and unobstructed acts of all concerned; for the

use of this way,— the only one in existence or use,— had been so constant and of so many years duration, including eight years of the defendant's occupation, without any objection from any source until the defendant's acts complained of, that it had become a well-defined way on the face of the earth.

2. Whatever might be urged against the soundness of the instruction concerning the school-house lot, had it been made applicable to the lands of all the surrounding owners over which the plaintiff could claim no lawful right without their permission, still as its application was confined to the school-house lot and the facts in this case, we think the defendant has no just cause of complaint,— especially as there was no way across the defendant's parcel other than the one which had been used so long and which, from the acts of the owners concerned and the acquiescence of the school-district, it may be inferred was agreed upon; and that no other way has been designated by the defendant. *Rumill* v. *Robbins*, 77 Maine, 193 ; *Schmidt* v. *Quinn*, 136 Mass. 575. Until the school-district interrupts the plaintiff's long-used way over its two rod lot, or the defendant designates some new way over his land for the plaintiff's use,— neither of which has been done,— we fail to perceive how the defendant can complain of the doctrine contained in the instruction. Moreover, assuming that the lane was intentionally reserved by Yeaton and Kimball as a way to and from the remainder of the lot, and the school-district should, at this late day, prevent any further use of its small territory, the plaintiff might, in the absence of any new way better suited to the interest and convenience of the defendant and designated by him, extend his old one across the southwest corner of the front lot next to the school-house lot.

So much of the first and second requested instructions, as is applicable to the facts in the case, was given in the charge, and the exceptions to the requested instructions, do not seem to be urged by the defendant.

*Exceptions overruled.*

PETERS, C. J., WALTON, LIBBEY, EMERY and FOSTER, JJ., concurred.