JANE M. McINTIRE *vs.* CHARLES G. LAUCKNER.

Sagadahoc.    Opinion November 23, 1911.

*Wills.    Construction.    Exceptions.    Reservations.    Deeds.    Statutes.    Easements.
Right of Way by Necessity.    Trespass Quare Clausum.    Case.    Statute, 1855,
chapter 129.    Revised Statutes, chapter 20, sections 5, 6.*

A "reservation" in a will may be construed as an exception in order to effectuate the testator's intent.

A reservation may be said to vest in the grantor some new right or interest not before existing in him, while an exception in a grant retains in him title to what is excepted.

If a reservation does not contain words of inheritance, it will give only an estate for the life of the grantor.

The operation of an exception is to retain in the grantor some portion of his former estate, and whatever is thus excepted or taken out of the grant remains in him as of his former title.

Where a testator reserved the burying ground on his farm "to be one quarter of an acre of land," . . . . . "the graveyard to be for the use of the family forever in common," *held* that the reservation should be construed as an exception, though no words of inheritance were contained in the reservation, and that the fee to the excepted lot descended to the testator's heirs.

Where a testator by his will made in 1844 and proved and allowed in 1849, excepted a burying ground on his farm "to be one quarter of an acre" but boundaries were never set up except as to a lot 32 feet square, *held* that the exception was inoperative to give title in anything more than the lot actually marked.

The statute of 1855, chapter 129,—now Revised Statutes, chapter 20, section 6—requiring a description of land appropriated for a family burying ground to be recorded in the registry of deeds, was not designed to be retroactive and hence does not apply to an exception of a burial lot from a devise made in 1849.

Under a devise of a tract of land excepting a burial lot for the use of testator's family forever surrounded by the land devised, *held* that the testator's heirs had a right of way by necessity from an adjacent town road to the lot.

*Held,* that an action for damages for obstructing a right of way leading from a town road to a burial lot was on the case, and not in trespass quare clausum, where it was not claimed that defendant entered the burial lot, though it was alleged that he broke and entered plaintiff's inclosure.

On report.    Judgment for plaintiff.

Action on the case to recover damages for the obstruction of an alleged right of way leading from a town way to a burial lot alleged to be owned by the plaintiff but surrounded by the defendant's land. Plea, the general issue with a brief statement alleging that "said plaintiff is not and never has been the proprietor of a certain burial lot enclosed in whole or in part as set forth in the plaintiff's said writ," and that the "said plaintiff never had the right to pass and repass over nor a right of possession to any right of way as set forth in plaintiff's said writ."    An agreed statement of facts was filed and the case reported to the Law Court for determination.

The case is stated in the opinion.

*Edward C. Plummer*, for plaintiff.

*George W. Hunt*, for defendant.

SITTING:  WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

WHITEHOUSE, C. J.    This is an action on the case in which the plaintiff seeks to recover damages for the obstruction of a right of way leading from a town road to a burial lot surrounded by the defendant's land.    The defendant denies that the plaintiff is owner or part owner of the burial lot in question, and denies that she had any right of way to it over the defendant's land.    The case is reported to the Law Court on a brief statement of facts, with a stipulation that in the event of decision in favor of the plaintiff the damages are to be assessed at ten dollars.

The plaintiff's contention is based on a reservation in a devise contained in the will of her grandfather, William Sprague, who had title to the land now owned by the defendant, on which the burial lot is situated.    This will was made by the testator in 1844 and approved and allowed in 1849.    The reservation is as follows: "I reserve the burying ground on my farm to be one quarter of an acre of land where my wife and children are buried, and order grave-stones for myself to be provided by my executors and paid for out of my estate, the graveyard to be for the use of the family forever in common."

It appears from the agreed statement of facts in the case that the boundaries of the burial lot in which the testator's wife and children are buried are permanently marked by stone fence posts, from which, however, the rails originally affixed thereto have disappeared in the lapse of time and process of decay, and that the size of the burial lot thus located by the stone posts is thirty-two feet square. It further appears from the agreed statement, "that the distance from the town road at the bars alongside the road and giving access to the burial lot, is three hundred and sixty-eight feet to the entrance of the enclosed part of the lot; that no part of the enclosed burial lot has been ploughed up by defendant, and none of the bodies there been disturbed by him; that a monument and a small gravestone mark the graves of William Sprague's wife and the grave of William Sprague respectively and have been continuously in position there for some sixty years, and that the plaintiff's son is buried there; that the ground has been ploughed up by defendant so as to completely encircle the graveyard and leave no passable right of way thereto from the bars at the town road; that no statutory record of the graveyard has ever been made; that defendant owns the ground surrounding the graveyard and did own it at the time of the alleged trespass, subject to the right of passage over it by plaintiff from the public road to the graveyard if such a right of way shall be found by the Court to have existed; that there is not now and never has been a made roadway from the bars to the graveyard but the regular approach to the yard from the town road always has been in practically a straight line from the bars to the yard; that this right of way was obstructed as claimed, by the defendant, at the time plaintiff had occasion to use it; that no monuments or other boundary marks indicating the limits of the fourth of an acre which the testator attempted to reserve have ever been set up beyond the stone fence posts around the burial lot thirty-two feet square as above stated; that the defendant purchased the property surrounding the burial lot in 1888 from Rachel Jewell, grand-daughter of William Sprague, by deed of warranty, in which there are no reservations of the burial lot, and that the ground surrounding the enclosed lot, is, and has been, an open field."

1.  The purpose obviously sought to be accomplished by the "reservation" in the devise of William Sprague above stated, can be effected by construing the reservation as an exception, as the court is often required to do in order that the intention of the parties may not be defeated.   A reservation may be said to vest in the grantor some new right or interest not before existing in him, and if it does not contain words of inheritance it will give only an estate for the life of the grantor.   The operation of an exception on the other hand is to retain in the grantor some portion of his former estate and whatever is thus excepted or taken out of the grant remains in him as of his former title.   *Engel* v. *Ayer*, 85 Maine, 448, and cases cited.

It is not in controversy that William Sprague had title in fee simple to all the land in question, and the burial lot excepted from the devise in his will descended to his heirs in fee without words of inheritance.   *Wood* v. *Boyd*, 145 Mass. 179 ; *Stockbridge Co.* v. *Hudson Co.*, 107 Mass. 290 ; *Winthrop* v. *Fairbanks*, 41 Maine, 307.   Thus the plaintiff became one of the owners of the burial lot 32 feet square, the bounds of which were conspicuously marked by stone fence posts.

2.  But there is no evidence that the "one quarter of an acre" which William Sprague attempted to "reserve" from his devise, has ever been appropriated to the purposes of a burying ground either during the lifetime of William Sprague or by his heirs since his death.   It has never been definitely located upon the surface of the earth.   Its boundaries have never been marked by monuments of any kind indicating its location with reference to the burying ground 32 feet square which was enclosed by a fence of stone posts and rails.   There is an entire absence of any description from which it can be determined whether the "one quarter of an acre" was to be two rods wide and twenty rods long, with the enclosed lot 32 feet square constituting a part of it, or was to be in the form of a square with the enclosed lot in the center of it.   The language of the will reserving "the burying ground on my farm to be one quarter of an acre of land" warrants the inference that the burying ground 32 feet square had not been enclosed by the stone posts and rails at the

date of the will, and it may also be inferred from all the evidence that the testator or his heirs, at some time prior to the defendant's purchase in 1888, having reached the conclusion that four square rods would be sufficient for that burial lot, decided not to incur the needless expense of fencing forty square rods, and thereupon erected the enclosure of stone posts and rails around the lot of about four square rods. In any event this is the only lot that was ever definitely located, and must be deemed the full amount of land that it was the intention of the testator or his heirs to appropriate for that burying ground. The reservation or exception in the devise of William Sprague is inoperative and ineffectual to give the plaintiff title in anything more.

3. The statute of 1855, chapter 129, (R. S., ch. 20, sec. 6), requiring a description of land appropriated for a family burying ground to be recorded in the registry of deeds was not designed to be retroactive, and is not applicable to the reservation in this case made in 1849. Nor does sec. 5 of c. 20, affect the question here presented.

4. The testator and his heirs had a right of way by necessity from the town road to the enclosed burying ground in question. Such a right "results from a grant or reservation implied from the existing circumstances in which the grantee, — or in case of reservation, — the grantor is thereby placed. When a landowner conveys a portion of his lot, the law will not presume it to have been the intention of the parties that the grantee shall derive no beneficial enjoyment thereof in consequence of its being inaccessible from the highway, or that the other portion shall, for like reason, prove useless to the grantor." *Whitehouse* v. *Cummings*, 83 Maine, 91.

In the case at bar the lot reserved by the testator in the devise in question was entirely surrounded by his own land, and was inaccessible except through that land. It is conceded in the statement of facts that a right of way by necessity had received practical recognition among the parties for more than sixty years, and that during all this time the course of travel to the burial lot has been in a straight line from the bars at the town road. It is also conceded that by the acts of the defendant complained of in the plaintiff's

writ, this way was obstructed and rendered impassable, and that the burial lot was inaccessible by any other way than over the defendant's land.

The defendant very properly contends that trepass quare clausum will not lie in favor of one whose right of way over the land of another has been obstructed by the owner of the land.   The declaration in the plaintiff's writ, however, is not in trespass quare clausum, but in a plea of the case, and the gist of his action is the obstruction of the plaintiff's right of way to the family burial lot.   It is true that in accordance with his contention that 40 square rods had been excepted for the burial lot, the plaintiff incidentally avers in his declaration that the defendant in plowing up and obstructing the right of way, "broke and entered the plaintiff's enclosure," but it is not claimed that the defendant entered the enclosure of four square rods, and the gravamen of the complaint is that the defendant rendered the right of way impassable.

It is the opinion of the court that judgment must be entered for the plaintiff, and in accordance with the stipulation of the parties, the certificate must be,

*Judgment for the plaintiff for*
*ten dollars.*