HERBERT L. YORK *vs.* ULYSSES G. GOLDER.

Kennebec.        Opinion July 18, 1929.

*Ames & Ames,* for plaintiff.
*George M. Chapman,* for defendant.

SITTING: WILSON, C. J., DUNN, DEASY, BARNES, BASSETT, PATTANGALL, JJ.

WILSON, C. J.    In 1890, and for some time prior thereto, one Baker owned both parcels of land located in the town of Oakland, now owned respectively by the plaintiff and defendant, as well as adjoining land on the west. The entire tract was low and swampy

and the natural flow of the surface water therefrom was toward the southeast where its natural flow was obstructed by a public way, now known as High Street.

At the southeasterly corner of the land now owned by the defendant the town at some time constructed a culvert to discharge the water collected on the north side of High Street to the south side where it was carried off in a ditch or by the natural slope of the land to the south.

About 1890, Baker, having built the house now occupied by the plaintiff and having sold other lots to the west on which one or more houses were built, to provide drainage of the land and for the kitchen waste, constructed a drain in the rear of the York house which was also extended in the rear of the other houses located on the northery side of High Street and westerly of the York house, and extended the drain southeasterly to the southeasterly corner of the lot now owned by the plaintiff.and across the land now owned by the defendant to the culvert under High Street.

He also connected the cellar under the house now owned by York by a tile pipe with the above-described drain. The drain in the rear of the York house was filled in with rocks and covered, but where it crossed the land now owned by the defendant was open and from three to four feet deep. At the time of the construction of the drain and for more than thirty years there was no building on the lot now owned by the defendant.

The land now owned by the plaintiff and the defendant was occupied by Baker for several years after the construction of the drain. He sold the house and land now owned by York to one party and later the land owned by the defendant to another. The York land passed through several hands until in 1918, it, together with the defendant's lot came into the hands of one Morang who conveyed it to Della Briggs in 1918, who in turn in 1918 conveyed it to a Mrs. LaRock, who in 1922 on September 5 conveyed to the defendant the lot now owned by him, and five days later conveyed to the plaintiff the house and lot now occupied and owned by him.

During all this time from 1890, when the artificial drain was dug by Mr. Baker across the defendant's lot, it was used to carry away the surface water accumulating on the plaintiff's land and the land to the west and to discharge the kitchen waste from the York house

and the houses on the west and, so far as the evidence discloses, without protest from any owner of the Golder lot whenever during that period the York and Golder lots were owned by different parties.

In 1925, the defendant built a house on his lot and filled up the drain, the result of which was to cause the surface water and house waste to back up and accumulate on the York land and the land to the west, filling the cellar of the York house with stagnant, filthy water from August until November, 1925, when the town lowered the sewer in High Street and the plaintiff was able to connect his cellar drain with the sewer, which he previously had not been able to do because of the elevation of the public sewer.

The plaintiff in his writ claimed a right to the use of the drain so constructed across the Golder lot as it had been used by his predecessors in title, and claims that right by virtue of an implied reservation at the time of the conveyance by Mrs. LaRock to Golder and an implied grant in connection with Mrs. LaRock's deed to him, as neither deed mentioned the drain in terms. After the evidence was in, the presiding Justice granted a non-suit to which the plaintiff excepted, and the case is before this court on the plaintiff's exceptions.

The law appears to be well settled that there may be implied reservations of easements as well as implied grants where the easement is one of strict necessity. While there is some conflict of authority, the doctrine laid down in *Pyer* v. *Carter*, 26 L. J. Exch., N. S., 258, somewhat modified by later decisions as to the necessity which must exist, is now quite generally followed not only in England; *Morland* v. *Cook*, L. R., 6 Eq., 252; *Watts* v. *Kelson*, L. R., 6 Ch., 171; but in the majority of the states. Farnham on Water & Water Rights, Vol. III, Secs. 832, 832a, 832b; 26 L. R. A. (N. S.), 321 Note, 9 R. C. L., p. 765, Sec. 28; *Carbrey* v. *Willis*, 7 Allen, 364; *Willey* v. *Thwing*, 68 Vt., 128; *Kelly* v. *Dunning*, 43 N. J., Eq. 62; *Dunklee* v. *Wilton R. Co.*, 24 N. H., 489.

That an implied reservation of an easement of necessity, though the servient estate is conveyed with covenants of warranty, may exist is recognized in this state in *Warren* v. *Blake*, 54 Me., 276; *Dolliff* v. *B. & M. R. R.*, 68 Me., 173; *Watson* v. *French*, 112 Me., 371, 375. The true rule being that where an easement exists over

land that is open and apparent and in use at the time of the conveyance and strictly necessary to the enjoyment of another part and the owner of both the dominant and servient part conveys the servient part, even with covenants of warranty, there is an implied reservation of the easement for the benefit of the dominant estate.

The controlling elements in determining whether an implied reservation exists is the openness of the use of the easement at the time of the transfer, and the necessity of its existence for the reasonable enjoyment of the part retained by the owner. In determining the necessity it must be shown to be one of "strict necessity," that is, that a substitute can not be provided by the owner over his own land at any reasonable outlay of money, *Carbrey* v. *Willis*, supra; *Randell* v. *McLaughlin*, 10 Allen, 366.

In the instant case there was evidence tending to show that the drain across the defendant's lot was open and that its use must have been apparent to the defendant at the time of the purchase of his land, and also evidence tending to show that its continued existence was strictly necessary to the enjoyment of the plaintiff's premises and that no substitute therefor could be provided by the plaintiff at any reasonable expense until the town lowered its sewer, thus furnishing an application of the rules of law above laid down, if the jury found the necessity existed. We think there was evidence sufficient to go to the jury on the question of whether the drain was open and its purpose apparent and an easement of a drain across the defendant's land was necessary to the reasonable enjoyment to the plaintiff's premises and that no substitute could be provided by the plaintiff at any reasonable expense.

*Exceptions sustained.*