MATTIE STURTEVANT FLOOD
*vs.*
GEORGE L. EARLE, JR.

Kennebec.    Opinion, January 19, 1950.

*Perkins, Weeks, and Hutchins,*
*William H. Niehoff,* for plaintiff.

*Locke, Campbell, Reid, and Hebert,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, JJ.

FELLOWS, J.   This case comes before the Law Court on objections and exceptions to an acceptance of a referee's report.

The action is one of trespass, brought before the Superior Court in Kennebec County, for travelling "over and across said (plaintiff's) close and defendant did wrongfully operate and propel a motor vehicle over and across said close and did wrongfully leave his said vehicle parked on said close thereby wrongfully excluding said plaintiff from her rightful possession of said close."   The defendant's plea is not guilty, with a brief statement "that he has a right of way over and across the plaintiff's close and that the alleged trespass was only the rightful use of said right of way."   The action was referred, and the referee found that the defendant, George L. Earle, Jr., had "a right of way by necessity from the main highway" but because the defendant had improperly parked on the plaintiff's lot, the referee found "the defendant guilty and assessed damages at one dollar."   The defendant, Earle, moved acceptance of the referee's report, and the plaintiff, Flood, filed objections. The objections were overruled, the report accepted, and exceptions to the action of the Superior Court in accepting the report were taken by the plaintiff.

The principal question before the Law Court, as raised by the objections and exceptions, is whether the referee was

correct in determining from the evidence that the defendant had a right of way by necessity across the plaintiff's land.

The report of the referee says:

> "After hearing in the above cause a view of the premises was taken by the referee by agreement.
>
> The plaintiff and the defendant with his father are owners of adjoining cottage lots on the shore of Messalonskee Lake, a great pond. For convenience, the lots are respectively called the 'Flood lot' and the 'Earle lot.' The lots were at one time part of the Cummings farm extending from the main highway to the lake shore. The Earle lot was conveyed in 1906 to predecessors in title of the defendant and his father and was the first shore lot sold from the farm.
>
> I find the defendant has, and his predecessors in title have had, a right of way by necessity from the main highway to the Earle lot. Since 1906 the right of way has been located in part across the Flood lot. Changes in location of the right of way, including the change to the present location, have been made by agreement.
>
> The defendant, however, has done more than use his right of way. He has parked his automobile on the plaintiff's lot, and this he had no right to do. Accordingly, I find the defendant guilty and assess damages at one dollar ($1.00)."

It does not appear from the report of the evidence that "Snows Pond," now called "Messalonskee Lake," has any public landing place. It does not appear from the evidence that the defendant has any road or way to reach the pond from the main highway, except to cross land of other owners. The evidence does not disclose any method or way to reach the defendant's property by land except by crossing the land of the plaintiff. The referee could find, and undoubtedly did find, either that there was no public way to the lake, or that the lake was not "navigable," in the sense that it could be used as a highway. The referee could, in fact, find either or both to be true.

There was no express grant of any right of way made to the defendant or to defendant's predecessors in title by the owner of the "Cummings Farm," so-called, from which farm came the adjoining shore lots of the plaintiff and defendant. Arthur M. Alexander and Aimee Alexander, the owners in 1931 when the plaintiff purchased, made an express grant to the plaintiff of a right of way across the farm, "said right of way to be used in common with other cottage owners." The defendant's lot was sold out of the farm in 1906, twenty-five years before the lot of the plaintiff, and the defendant and his predecessors in title have been accustomed to cross and recross the other portions of the farm (including the plaintiff's lot) in going to and from the main highway. The location of the way, as used by the defendant and other cottage owners including the plaintiff, was changed somewhat during the years by use and apparent acquiescence of all parties. The sale of other lots and the building of garages etc. probably made such changes more convenient.

The report of a referee made under a rule of court, pursuant to the statute, is equivalent to a finding by a single justice with jury waived. It is prima facie correct. *Bourisk* v. *Mohican Co.*, 133 Me. 207; *Hanson* v. *Loan Association*, 132 Me. 397. If there is any evidence of probative value to support the findings of fact made by a referee, such findings are conclusive. *Bradford* v. *Davis*, 143 Me. 124; 56 Atl. (2nd) 68; *Wood* v. *Balzano*, 137 Me. 87.

It was early decided in Maine that where one conveys to another a tract of land surrounded by the grantor's own land, or inaccessible except through the grantor's own land, he is considered to have granted by implication a right of way to and from it. *Trask* v. *Patterson*, 29 Me. 499; *Whitehouse* v. *Cummings*, 83 Me. 91. The test is necessity and whether the party claiming can at reasonable cost on his own estate and without trespass create a substitute. *Watson* v. *French*, 112 Me. 371, 375.

No right of way from necessity exists across the remaining land of the grantor, where the land to which such right of way is claimed borders on the sea. *Kingsley* v. *Gouldsboro Land Improvement Co.*, 86 Me. 279. It must be necessity and not mere convenience. If free access to the land over a public navigable water exists, a way by necessity cannot be implied. *Hildreth* v. *Googins*, 91 Me. 227. An easement of necessity is sometimes recognized, however, where the expense to be incurred in creating or using another way is excessive. *Littlefield* v. *Hubbard*, 124 Me. 299.

Bodies of water are navigable when they are used, or are capable of being used, in their ordinary condition as highways. This is a question of fact. *Smart* v. *Lumber Co.*, 103 Me. 37.

Ponds containing more than ten acres are known as "great ponds." They are public ponds. The state holds them and the soil under them in trust for the public. The public, in the absence of statute, have the right to fish and fowl and to cut ice upon them, by virtue of the Colonial Ordinance of 1641, provided the citizen can reach the pond by "passing to it on foot without trespassing upon any man's corn or meadow." *Conant* v. *Jordan*, 107 Me. 227; *Barrows* v. *McDermott*, 73 Me. 441; *Barstow* v. *Rockport Ice Co.*, 77 Me. 100.

The location of ways arising from necessity may be changed by the concurrence of the parties. Such location or change need not be in writing nor formally agreed to. It may be inferred from the acts or acquiescence of the parties. *Rumill* v. *Robbins*, 77 Me. 193.

Although there was no express grant of a right of way to the defendant's lot across the remaining portions of the farm, when the original deed was given in 1906, there was a reservation of such a way in the plaintiff's chain of title. The common grantor was Warren P. Cummings, who as owner of the farm, conveyed what is now the defendant's lot to Ernest L. Booker and Justin A. Sawtelle by warranty

deed April 19, 1906. From Booker and Sawtelle the title to the defendant's lot passed by several mesne conveyances to the defendant, George L. Earle, Jr. and his father, in 1941. The lot of the plaintiff, on the other hand, was purchased by her in 1931 from Arthur M. Alexander, who had received title to the farm through Warren P. Cummings and Elmer Cummings. The 1930 deed of the "Cummings Farm" from Elmer Cummings to Alexander, after describing the whole farm, specifically said "excepting and reserving from the above described premises so much of the same as was conveyed by Warren P. Cummings to Ernest Booker and Justin A. Sawtelle * * * together with a right of way across the above described premises to said land of Booker and Sawtelle as now used and travelled by cottage owners." The immediate deeds to the plaintiff, Mattie Sturtevant Flood, of her lot and right of way, were given to her in 1931 by Arthur M. Alexander and Aimee L. Alexander. The deed of the plaintiff's right of way says "A right of way across the so-called Cummings Farm * * * from the County Road to the premises * * * said right of way to be used in common with other cottage owners."

An implied grant of a way by necessity, to the defendant's lot, might be found by the referee to have been recognized by these subsequent owners of the Cummings Farm, and might be found by the referee to have been expressly reserved when the plaintiff herself received title to her lot.

It further appears that after a full hearing of this case by agreement of parties, the referee personally viewed the premises. What the referee may have seen and learned through observation does not, of course, appear. In such a case as this, a view of all the existing places, such as the lots of plaintiff and defendant, the way as travelled, the farm, the lake, and the surrounding country, might be, and should be a factor in his decision. He had the opportunity to learn, at first hand, how the defendant could reach the main highway from his lot. He could perhaps see whether the lake was or was not in fact a navigable highway, and

whether the defendant had free access to the lake from the main road. The court cannot say that the referee was not fully justified in finding, either from the record, which in itself presents sufficient evidence of "probative value," or from the record and his personal examination, that there was a way from necessity, and that the way had been changed to its present location by agreement.

The action of the Superior Court in accepting the report of the referee was proper.

*Exceptions overruled.*