CHARLES D'ALFONSO ET AL.
*vs.*
THE CITY OF PORTLAND

Cumberland.    Opinion, November 5, 1958.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ.  SIDDALL, J., did not sit.

*Israel Bernstein,* for plaintiff.

*Robert W. Donovan,*
*Barnett I. Shur,* for defendant.

DUBORD, J.    This case is before us on exceptions of the defendant to the acceptance of the report of a referee's finding for the plaintiffs.

The plaintiffs brought action against the City of Portland claiming a balance remaining due for labor and materials furnished under a contract for the construction of a sewer in certain public streets.

The case was heard with the right of exceptions reserved in matters of law, pursuant to the provisions of Rule 42 of the Rules of Court.

Under date of July 11, 1956, the City of Portland sent out notices to contractors inviting bids for the construction of the sewer in question. Included in this notice were estimates of quantities for earth excavation, sewer pipe and other materials, including gravel, pertaining to the proposed sewer.

On July 16, 1956, the plaintiffs submitted a bid based on unit prices totaling $43,347.69. By a letter dated July 16, 1956, and signed by the Commissioner of Public Works for the City of Portland, plaintiffs were notified that their bid was accepted and on July 17, 1956, the contract which was attached to the original "notice to contractors" was signed by the defendant and the plaintiffs.

It is admitted that the work was satisfactorily performed and the City of Portland paid the plaintiffs the amount of $35,947.86. Plaintiffs brought suit for $7,399.83, representing the difference between the amount paid to them and the total of the unit price bids.

The claim is based upon the contention that additional work and materials were furnished by the plaintiffs under four of the items listed in the estimate of quantities and included in the contract. For purposes of identification we will classify these items with the letters used in the estimate of quantities, the unit price bids and the items as listed in the contract, viz., A, R, S and U.

The first item (A) involves excavation which had been estimated at 3652 cubic yards. For this item, plaintiffs were paid for 2691.36 cubic yards and plaintiffs seek to recover for 960.64 cubic yards at $7.35 per cubic yard.

The second item (R) involves a claim on the part of the plaintiffs for 12 cubic yards of heavy run gravel at $1.90 per cubic yard.

The third item (S) involves a claim for 113.62 cubic yards of screened gravel at $4.10 per cubic yard.

The fourth item (U) involves 84 cubic yards of heavy gravel alleged to have been furnished by the plaintiffs at $1.90 per cubic yard.

These four items amount to $7,708.94.

In their writ, the plaintiffs had claimed as due them the amount of $7,399.83. The referee found for the plaintiffs on all four items and ruled that the defendant was indebted to the plaintiffs in the amount of $7,708.94. However, lacking an amendment relating to the amount claimed, the referee found for the plaintiffs in the amount of $7,399.83, plus interest, from the date of the writ in the amount of $362.59, or a total amount of $7,762.42.

In their writ, the plaintiffs declared upon a contract in the specific amount of $43,347.69 and to arrive at this figure they set forth in detail the estimates listed in the "notice to contractors" and multiplied these estimates by their unit bids. Addition of the products of this multiplication gives us the alleged amount of the contract.

The defendant pleaded the general issue and by way of brief statement alleged in substance that plaintiffs had been paid in full and that by the acceptance of the final payment, had released the defendant from any further claim. In the course of the hearing, the contentions set up by the brief statement were waived.

Pursuant to provisions of Rule 21 of the Rules of Court, after plaintiff had filed a motion that the report of the referee be accepted, the defendant filed seventeen objections to the acceptance of the report. The objections were overruled and the report was accepted. To this ruling, the defendant took exceptions and these exceptions are now before this court.

Objections 1 to 3, inclusive, allege in substance that there is no evidence to support the referee in his finding that the plaintiffs were entitled to be paid for additional excavation in the amount of 960.64 cubic yards of earth, under item A.

Objection 4, is based upon the contention that the referee erred in not making a finding that the plaintiffs had sheeted the trench at a point outside of the normal pay lines.

Objection 5, is a contention that the referee erred in not finding the distinction between "bracing" of the trench and "sheeting" of the trench as a determinant of the so-called pay lines.

Objection 6, alleges that there was no evidence that the Commissioner of Public Works had been given an opportunity to determine what work, if any, outside of the outside lines of the sewer structure, was necessary for sheeting and braces, pursuant to the provisions of Section 16, Article VII of the contract.

Objections 4 to 6, inclusive, relate to item A.

Objections 7 to 9, inclusive, relate to items R, S and U, and aver that there was no evidence to support the finding of the referee in relation to these items concerning the alleged furnishing of heavy bank-run gravel, screened gravel and heavy gravel.

Objection 10, contains a contention that there was no evidence to support the amount of damage found due.

Objection 11, alleges that because the plaintiff declared upon a lump sum contract and the contract was in fact based upon unit prices, that there was a fatal variance between the allegations and the proof.

Objections 12 to 15, inclusive, relate to the exclusion on the part of the referee of certain evidence offered by the defendant in sur-rebuttal.

Objections 16 and 17, are general allegations that there was no evidence to support the contentions of the plaintiffs and the findings of the referee.

The principal controversy revolves about item (A) under which the plaintiffs sought to recover for excavating 960.64 cubic yards.

During the course of the trial, much testimony was introduced about "pay lines," "sheeting," "open sheeting," "close sheeting," "sheathing," "open sheathing" and "close sheathing."

It appears that "pay lines" represent the outside vertical lines of a sewer trench and that a sewer contractor is entitled to use as one of the dimensions for which he is entitled to be paid for excavating, the distance between these two lines.

Apparently "sheeting" and "sheathing" are synonymous terms. This is indicated by the fact that in Section 16, Article VII of the contract, the word "sheeting" is used, and in the testimony, both the plaintiffs and representatives of the defendant used the word "sheathing" as meaning the same thing as "sheeting."

"Close sheeting" or "close sheathing" connotes the placing of boards or planks upright along the wall of the trench side by side, while "open sheeting" means the placing of boards upright at some distance apart. "Bracing" refers to the necessary supports for "sheeting" or "sheathing"

and also means the use of the necessary planks when the trench is built wider and on a slant.

Section 16, Article VII of the contract provides how earth excavation is to be computed and part of the section reads as follows:

"In no case will the width of trench be taken as less than two (2) feet. If it is necessary to sheet the trench the width shall be such as to provide such necessary room for the sheeting and braces outside the outside lines of the sewer structure as shall be determined by the Commissioner."

It is contended by the plaintiffs that the nature of the soil in the location in question was such as to require either sheathing or bracing, and this point is admitted by the defendant. The plaintiffs claimed, and their evidence supported the claim, that instead of digging a trench with vertical walls, they secured permission from the inspecting official or officials of the defendant to build a wider trench with sloping sides, thus eliminating vertical sheathing, either close or open. As a result of digging this wide trench, it was their contention that they excavated as much as 5000 cubic yards of earth. However, they sought to recover, not for the entire amount of their excavation, but an amount representing the difference between the yardage for which they were paid and the cubic yardage contained in the original estimate. There is substantial evidence to support the finding of the referee that the plaintiffs did excavate this extra amount of earth.

Moreover, there is evidence to sustain the finding of the referee that permission was sought and obtained from the inspecting officials of the defendant to construct the sewer in the manner selected by the plaintiffs. It was also admitted by the inspecting engineer, and by the commissioner acting for the defendant, that when the estimate of the necessary amount of earth excavation, item (A), was made, it

was contemplated that the nature of the soil was such as would require a widening of the trench and the extension of the so-called pay lines, and that the estimate of excavation was increased by approximately 1000 cubic yards, to cover this anticipated widening. To put this in another way, the estimate under item (A) as contained in the notice to contractors was in the amount of 3652 cubic yards, but of this amount, approximately 1000 cubic yards had been added for widened pay lines due to the necessity of close sheathing.

There is substantial evidence to support a finding that there was no objection on the part of the supervising officials that the ditch be cut on a wide angle and ordinary bracing used instead of sheathing, either open or close. It was also testified by officials representing the defendant that the job could be performed satisfactorily either way.

The issue was, therefore, clearly joined and the evidence supports the finding of the referee.

Defendant, therefore, takes nothing by his objections 1 to 3.

As to objection 4, from the manner in which the case was tried and the issue joined, the matter upon which the defendant says a finding should have been made by the referee did not represent a material matter in issue.

In *Kennebec Housing Company* v. *Barton,* 122 Me. 374, 377, 120 A. 56; this court said:

"We do not adopt the doctrine prevailing in some jurisdictions that the mere failure of a referee to find facts or law specifically takes away the discretion of the court at nisi prius to accept the report. Nothing appearing to the contrary it is presumed that the referee passed upon all issues submitted to him and no others."

See also *Bernstein* v. *Ins. Cos. and Maccabees,* 139 Me. 388, 34 A. (2nd) 682.

We rule that it was not necessary for the referee to make the special finding urged by the defendant.

The same reasoning applies to objection 5.

As to objection 6, it has already been pointed out that duly authorized officials of the defendant approved the method adopted by the plaintiffs for the digging of the trench in question. The commissioner testified in substance and effect that sheathing and consequent extra excavation did become necessary as the job developed and that this extra excavation did involve a quantity of at least 1,000 cubic yards as originally estimated. The only reasonable inference to be drawn from this and other evidence in the case is that if questions of necessity and quantity of extra excavation had been submitted to the commissioner in accordance with the technical requirements of Sec. 16, he would have been compelled in good faith by the conditions then existing to have determined that extra excavation in the amount of 1,000 cubic yards was actually required to permit necessary sheathing. The defendant here cannot successfully defend on the ground of non-compliance with a technical requirement of the contract when it is apparent that compliance would in no way have changed the end result.

As to objections 7 to 9, relating to items R, S and U, there was ample evidence to support the findings of the referee.

The same thing is true of the issues raised by objection 10.

Objection 11 raises the issue of variance between the allegations and the proof.

Upon the question of variance this court said in *Tuttle* v. *Howland, et al.*, 145 Me. 246, 249, 75 A. (2nd) 374.

"A variance requires a real difference between allegation and proof. If the proof corresponds to the substance of the allegation, there is no variance,

> the test to be applied being the tendency of the evidence substantially to prove the allegation, not the literal identity of facts alleged and facts proven, 49 C. J., 807. 'It is not indispensable to recovery that a party should make good his allegations to the letter.' *Sposedo v. Merriman,* 111 Me., 530; and it is now held that no variance between pleading and proof will be deemed material if the adverse party is not surprised or misled to his prejudice in maintaining his action or defense upon the merits."

See also *Emery* v. *Wheeler, Admr.,* 129 Me. 428, 431, 152 A. 624.

To the same effect see *Peoples Savings Bank* v. *Chesley,* 138 Me. 353, 361, 26 A. (2nd) 632.

Upon this issue the referee in his report had this to say.

> "In the final analysis the amount to be paid for this excavation depends upon the quantities actually furnished under the terms of the contract. - - - - - I rule that the plaintiffs under the pleadings in this case may recover for the items in dispute provided they prove performance of the work involved under the terms of the contract, and within the limit of the amount claimed under their declaration."

We are of the opinion that this ruling was correct. It is of significance that upon every item except the four items in dispute, the plaintiffs, with very slight variations, were paid for work and materials exactly according to the estimates contained in the "notice to contractors." This is shown by plaintiffs exhibit No. 4, which was the engineer's estimate authorizing a total payment to the plaintiffs in the amount of $35,947.86.

As was said in *Bartlett* v. *Chisholm, et al.,* 146 Me. 206, 210, 79 A. (2nd) 167:

> "An action at law is not to be dismissed for mere defects in pleading that are amendable or may be

cured by verdict if it appears that the court has jurisdiction and the plaintiff has stated a good cause of action."

See also *Jones* v. *Briggs*, 125 Me. 265, 132 A. 817.

In the instant case the defendant was not surprised or misled to its prejudice in its defense upon the merits.

Our court said in *Cyr* v. *Landry*, 114 Me. 188, 196, 95 A. 883:

"This issue was tried out without objection. Under the rule laid down in *Cowen* v. *Bucksport*, 98 Maine, 305 and *Wyman v. American Shoe Refining Company*, 106 Maine, 263 that, where issues are so tried, the case may be considered as if the declaration had been amended to conform to the evidence, this second issue may be properly regarded as before the court."

We give consideration now to objections 12 to 15, inclusive, which relate to exceptions taken by the defendant to the exclusion by the referee of certain proffered evidence. After the plaintiffs had rested their case, permission was requested of the referee and granted that one of the plaintiffs, Charles D'Alfonso, be recalled for further cross-examination.

This witness was examined at length concerning conversations which took place at a meeting of the plaintiffs, officials of the defendant and their counsel, with particular reference to sheathing and bracing.

The witness testified that there was no discussion concerning the question of whether or not bracing was to be considered as a substitute for sheathing. Nothing in this subsequent examination changed the theory of the plaintiffs that they had dug a wide sloping trench, rather than dig a vertical trench with widened pay lines.

The evidence indicates that at no time did this witness contend that he had sheathed the trench and the division engineer for the defendant city had already testified that the witness, Charles D'Alfonso, had not mentioned bracing.

Two witnesses for the defendant were then put on in sur-rebuttal and were asked in substance whether there had been any mention of bracing at the conference in question; whether or not Charles D'Alfonso or his attorney had said anything about sheeting the trench; whether or not either of the plaintiffs had suggested that by bracing the trench they had in effect sheathed it. One of the witnesses, the Commissioner of Public Works, was asked to explain the distinction between bracing a trench and sheathing a trench. All of this evidence was excluded.

As previously pointed out, at no time during the course of the hearing had either of the plaintiffs or their witnesses contended that the trench in question had been sheeted or sheathed. Moreover, the evidence had already brought out the distinction between bracing and sheathing. An answer to any of the questions would have shed no light upon the issue. Without passing upon the question of whether or not this evidence was technically admissible, we are of the opinion its exclusion did not prejudice the defendant.

> "It is not enough for an excepting party to show that a question technically admissible was excluded; he must go farther and show affirmatively that he was prejudiced by such exclusion." *Selberg* v. *Bay of Naples, Inc.*, 130 Me. 492, 494, 157 A. 856.

As previously pointed out, plaintiffs based their claim upon the theory that they did not sheet the trench in question; that they dug a wide sloping ditch, which admittedly accomplished the result required in the construction of this sewer. Further testimony relating to sheathing or sheeting or bracing could add nothing to the case which could be of

any assistance in resolving the clear cut issue. Defendants were not prejudiced by these rulings and take nothing by their objections 12 to 15.

Neither do the plaintiffs take anything by their general objections 16 and 17.

We are satisfied that the evidence supports the findings of the referee.

> "The rule is too well established in our State to require more than passing mention that if there is any evidence to support the findings of fact by referees, exceptions will not lie." *Morneault* v. *B. & M. Railroad,* 144 Me. 300, 302, 68 A. (2nd) 260.

> "The controlling questions in this case were of fact and the decision of the referee thereon was supported by evidence of probative value. The exception to the ruling below cannot be sustained." *Pearl* v. *Cumberland Sand and Gravel Company, Inc.,* 139 Me. 411, 413, 31 A. (2nd) 413.

> "The report of the referee made under a rule of court, pursuant to the statute, is equivalent to a finding by a single justice with jury waived. It is prima facie correct. If there is any evidence of probative value to support the findings of fact made by a referee, such findings are conclusive." *Flood* v. *Earle, Jr.,* 145 Me. 24, 27, 71 A. (2nd) 55; *Bradford* v. *Davis,* 143 Me. 124, 56 A. (2nd) 68.

The entry will be

*Exceptions overruled.*