**J. Robert LeMAY et al.**

v.

**Carl L. ANDERSON et al.**

Supreme Judicial Court of Maine.

Feb. 16, 1979.

Timothy R. O'Donnell (orally), Waterville, for plaintiffs.

Percy Willette (orally), Unity, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

ARCHIBALD, Justice.

Pursuant to the Uniform Declaratory Judgments Act, 14 M.R.S.A. §§ 5951–5963,[1] the plaintiffs (husband and wife) sought in Superior Court a declaration of their right to utilize a road over property of the defendants (husband and wife) as the only means of access to their property on Unity Pond (also known as Lake Winnecook). They also sought injunctive relief. Following a non-jury trial the single justice found that an easement was created by implication in 1961. On the basis of that servitude the justice entered a "Declaratory Judgment that plaintiffs have a right to use the right of way over defendants' land to gain access to their property and the Defendants are ENJOINED from interfering with this use." From that judgment the defendants timely appealed.

We deny the appeal.

## FACTS

Prior to February 17, 1961, Lewis C. and Thelma C. Cunningham, as joint tenants, owned a parcel of land extending from U. S. Route 9 to the east shore of Unity Pond. In order to travel from Route 9 to their buildings on the lake shore, Mr. and Mrs. Cunningham utilized an existing private way that ran in a westerly direction over their property from Route 9 to the lake. On February 17, 1961, Mr. and Mrs. Cunningham conveyed to their daughter and son-in-law, Elizabeth and Ernest W. Richardson, as joint tenants, all of the above-described land with the exception of a strip of land 150 feet wide extending along the shore of Unity Pond. Without having expressly reserved a right to utilize the way from their cottage to Route 9, the Cunning-

1. Pertinent sections of the act provide:

§ 5953. Scope

Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declarations shall have the force and effect of a final judgment or decree.

§ 5960. Supplemental relief

Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith.

hams continued thereafter to use the same as the only means of ingress and egress to and from their cottage exactly as they had in the past.

When Ernest Richardson (his wife having died) conveyed to the appellants the land (hereinafter referred to as the Anderson property) between Route 9 and the strip of land owned by the Cunninghams, he made the following reservation:

> Excepting and reserving to the Grantor and others a right-of-way approximately sixteen (16) feet in width over an existing road located on the South side of the buildings which now exist on the above described parcel and running from U. S. Route #9 in a Westerly direction to the land of Lewis Cunningham.

At the time of this reservation Mr. Richardson had the first option upon the shorefront property and cottage owned by the Cunninghams (hereinafter referred to as the Cunningham property).

Since Mr. Richardson did not exercise the option to purchase the Cunningham property, on October 23, 1973, Mr. Cunningham, the surviving joint tenant, conveyed it to the LeMays. On September 1, 1977, Mr. Richardson gave to the LeMays a quitclaim deed purporting to convey an easement of a right of way over the Anderson property similar to the right of way reserved by Richardson in his conveyance to the Andersons.

## EXPRESS EASEMENT

█ The traditional rules of construction for grants or reservations of easements require that whenever possible an easement be fairly construed to be appurtenant to the land of the person for whose use the easement is created. *Davis v. Briggs*, 117 Me. 536, 540, 105 A. 128, 129 (1918), *quoting Cadwalader v. Bailey*, 17 R.I. 495, 23 A. 20, 21 (1891); *Jones v. Stevens*, 276 Mass. 318, 322, 177 N.E. 91, 93 (1931), *quoting Willets*

*v. Langhaar*, 212 Mass. 573, 575, 99 N.E. 466 (1912); 25 Am.Jur.2d, *Easements* § 13. Nevertheless, nothing within the easement reserved by Mr. Richardson indicates that the reserved privilege was intended to be more than a mere personal right or an easement in gross.[2] The retained right of way within the deed from Richardson to the Andersons does not profess to create a benefit in favor of any land and speaks only in terms of a personal benefit in favor of "the grantor and others." As an easement in gross the thus created right of way was not assignable. *Davis v. Briggs*, 117 Me. at 540, 105 A. at 129.

The quitclaim deed to the LeMays, therefore, was incapable of conveying a right of way to the appellees, and they take nothing therefrom.

## EASEMENT BY IMPLICATION

█ An easement over conveyed property, although not expressly reserved, may nevertheless be impliedly created in favor of the grantor of the servient estate. *York v. Golder*, 129 Me. 300, 301, 151 A. 558 (1930); *York v. Golder*, 128 Me. 252, 254, 147 A. 41, 42 (1929); *McIntire v. Lauckner*, 108 Me. 443, 447, 81 A. 784, 786 (1911). The traditional rules of construction favoring the grantee against the interests of the grantor when ambiguous language exists in the instrument of transfer necessitate, however, that ambiguities with respect to whether an easement was impliedly reserved be resolved in favor of the grantee. *Johnson v. Robinson*, 26 Md.App. 568, 338 A.2d 88, 92 (1975), *quoting Burns v. Gallagher*, 62 Md. 462, 471–72 (1884).

█ In determining whether the grantor impliedly reserved an easement over the conveyed land, the focus is properly upon the probable intent of the parties. *Tiffany on Real Property*, (3d ed.) § 781; 25 Am.Jur.2d *Easements* § 28. The understanding of the parties to the conveyance

2. An easement in gross may generally be described as an interest in land which 'is not appurtenant to any estate in land or not belonging to any person by virtue of his ownership of an estate in other land, but is a mere personal interest in or right to use the land of another . . .'
*Reed v. A. C. McLoon & Company*, Me., 311 A.2d 548, 552 (1973).

giving rise to the implied easement, therefore, is relevant. Also probative of the intent of the parties are the circumstances surrounding the transaction. Certain circumstances that evidence an intent to create an easement have become known as elements of an implied easement. The so-called elements of an implied reservation of an easement are (1) apparent and open use of the quasi-easement,[3] (2) severance of unity of title in the dominant and servient portions, and (3) the strict necessity of the servitude to the enjoyment of the dominant estate. *York v. Golder*, 128 Me. 252, 255, 147 A. 41, 42 (1929); *see also Watson v. French*, 112 Me. 371, 375, 92 A. 290, 292 (1914); *Warren v. Blake*, 54 Me. 276, 288 (1866).

In the instant case a right of way would have been impliedly created, if at all, at the time of the Cunninghams' severance of title to their land situated between Route 9 and Unity Pond. By the 1961 conveyance to their daughter and son-in-law, Mr. and Mrs. Cunningham transferred most of their property, including the road over which they continued to travel exclusively in order to reach the lakeshore property that they retained. Unity of title to the dominant and servient portions, and an existing and apparent use at the time of the 1961 conveyance are, in fact, undenied. The understanding of the grantees (the Richardsons)

of the servient portion also was that the Cunninghams had retained a right of way, although no express reservation was in the deed.

■ The principal issue concerning the implied reservation of an easement by the 1961 conveyance is whether the right of way was *strictly necessary* to the enjoyment of the lakeshore property. Appellants contend that although the right of way was the only means of access *over land* to the Cunningham property from Route 9 without trespassing elsewhere, the retained property's location upon a *lake* precludes a finding that the right of way over their land was strictly necessary. The grantors of the servient portion and their successors in title, according to appellant's argument, could reach the property by boat or over the ice.[4] *See Flood v. Earle*, 145 Me. 24, 28, 71 A.2d 55, 57 (1950); *Hildreth v. Googins*, 91 Me. 227, 228, 39 A. 550, 551 (1898); *Littlefield v. Hubbard, supra.* The unrebutted evidence, however, that Mr. and Mrs. Cunningham and their successors in title utilized only the road as a means of access to their cottage gives rise to an inference that the right of way was the *only* available means of access to the cottage and strictly necessary. The appellants offered no evidence that in 1961 any other access was possible without trespassing, and without

---

**3.** Unity of title to the dominant and servient estate, of course, extinguishes an easement. *Ritger v. Parker*, 62 Mass. (8 Cush.) 145, 146 (1851). To distinguish, however, the case in which an existing use is made of the servient portion to benefit the dominant portion from the situation in which there is no existing use at the time of severance of title, the existing use is referred to as a quasi-easement. *See Watson v. French*, 112 Me. 371, 375, 92 A. 290, 291 (1914); *Brown v. Dickey*, 106 Me. 97, 101, 75 A. 382, 384 (1909). An easement may also be impliedly created without a pre-existing use when access to the property conveyed requires trespass. Such an implied easement is referred to as a way of necessity. Cf. *Littlefield v. Hubbard*, 124 Me. 299, 128 A. 285, 38 A.L.R. 1306 (1925).

**4.** The presiding justice premised his verdict upon

the change in modes of transportation and social conditions. Even assuming that there is public access to Unity Pond, what

the value of the plaintiffs' land be if the only means of access to it lay over the water, or ice, and then through the public landing? . . . One of the reasons for the worthlessness of the plaintiffs' property if the only access were over the pond is the ever increasing reliance on the automobile. With travel to and from a house, a regular, and often much repeated, daily occurrence it is clear that travel from the public road to a person's property by boat is a tenuous position. Not only do the weather conditions in the summer and winter make such travel impractical, they also make it hazardous. In light of our holding we need not reach a decision upon whether the doctrine of *Good v. Earle* must be re-examined. We are cognizant, however, of the implied intent of the parties as the basis for an easement by implication. Changing lifestyles certainly affect the most likely intentions of the parties to a conveyance.

any evidence of the lake's navigability *and* its juncture with a public landing, the inference stood unrebutted. Insufficient evidence, therefore, exists within the record to support any finding other than strict necessity.

 Appellants also contend that the appellees' recent acquisition of other land that will allow them to build another road from the public highway forecloses a finding of strict necessity. This contention, however, manifests either a confusion with respect to the distinction between quasi-easements and ways by necessity or a misunderstanding of the basis for the elements of an implied easement. The recognized rule in Maine with respect to ways of necessity is that termination of the necessity extinguishes the easement. *See White-house v. Cummings*, 83 Me. 91, 99, 21 A. 743, 745 (1890); 25 Am.Jur.2d *Easements* § 106. A way by necessity, however, is not premised upon a *pre-existing use* or quasi-easement but upon a presumption that the parties intended the owner of the dominant estate to have a way to his property without trespassing. *See* n.3, *supra*.

Although the servitude in question here is a right of way, it was, nevertheless, a quasi-easement. The ultimate issue with respect to such an implied or quasi-easement is whether the parties to the conveyance in which title to the dominant and servient portion was severed intended the pre-existing use to continue. Only the circumstances at the time of that conveyance, therefore, are relevant. *See Elliott v. Ferguson*, 104 N.H. 25, 177 A.2d 387, 389 (1962); *McElroy v. McLeay*, 71 Vt. 396, 45 A. 898, 901 (1899); 25 Am.Jur.2d *Easements* § 33. The nonexistence of the easement's strict necessity today, because of recently acquired property, is irrelevant to the intent of the parties to the 1961 conveyance.

Finally, if an easement were impliedly created at the time of the 1961 transfer, it must necessarily have been appurtenant to the retained property, for which the easement's benefit inures. The right and burden relative to an appurtenant easement respectively pass to the grantees of the dominant and servient estates, assuming the grantees of the servient portion have actual, constructive or implied notice of the servitude. *Whittenton Manufacturing Co. v. Staples*, 164 Mass. 319, 41 N.E. 441, 445 (1895); *see also Davis v. Briggs*, *supra*; *Herrick v. Marshall*, 66 Me. 435, 439 (1877). The appellants obviously had notice of the servitude.

In summary, at the time of the 1961 conveyance Mr. and Mrs. Cunningham impliedly reserved a right of way to their cottage property. As an easement appurtenant to that property, the right of way passed to the appellees with the transfer of the Cunningham property.

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY and NICHOLS, JJ., did not sit.